EDWARD MALLINCKRODT, JR., PETITIONER, v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 104513.   Promulgated December 16, 1943.

*Charles P. Williams, Esq.,* and *Harry W. Kroeger, Esq.,* for the
petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

TURNER, *Judge*: The respondent determined deficiencies in the peti-
tioner's income tax for the years 1934, 1935, 1936, and 1937 in the
respective amounts of $32,056.96, $204,351.05, $63,200.73, and $82,548.93.

The issues are (1) whether certain undistributed income received in 1934, 1935, 1936, and 1937 by a trust created by petitioner's father and known as Trust No. 3660 was taxable to petitioner in the respective years; (2) whether certain acts of the petitioner in 1935 resulted in the revocation in that year of a charitable trust created by him in 1921 and in the realization of taxable gain by reason thereof; and (3) whether the petitioner is entitled to deduct certain trustees' fees and commissions paid by trusts revocable by petitioner, the income of which was taxable to him, and was further entitled to deduct certain expenditures made during 1934, 1935. 1936, and 1937 for investment advice, custodian and collection services, and the services of a financial secretary and bookkeeper and auditor. In addition, there are certain alternative issues relating to allowances for contributions. For convenience, the discussion of each issue will follow immediately after the findings of fact relating thereto, and the issues will be considered in the order previously noted.

### GENERAL FINDINGS OF FACT.

The petitioner is a resident of St. Louis, Missouri, and filed his income tax returns for the years 1934, 1935, 1936, and 1937 with the collector of internal revenue for the first district of Missouri. At all times throughout the years 1934 through 1937 the petitioner kept his books on the cash receipts and disbursements basis. His income tax returns for said years were filed on that basis.

### Issue 1.—Taxability of Income of Trust No. 3660.

#### FINDINGS OF FACT.

By an absolute and irrevocable indenture of trust executed April 17, 1918, Edward Mallinckrodt, Sr., petitioner's father, transferred to petitioner and the St. Louis Union Trust Co., as trustees, various properties. This trust was known as, and was carried on the records of St. Louis Union Trust Co., sometimes hereinafter referred to as trust company, as Trust No. 3660. The petitioner's father died in 1928, but petitioner and his wife, Elizabeth E. Mallinckrodt, are living. The trust is still in existence, and at all times during 1934 through 1937 was and now is being actively administered by petitioner and the trust company.

At the time of the creation of the trust the petitioner's father was interested in the completion of a building enterprise called the Arcade Building Enterprise. The plans for the enterprise contemplated the erection of several buildings which upon completion would constitute parts of a single building known as the Arcade Building and would be managed and operated as a single building. Jane Holding Corporation, in which he was a stockholder, was engaged in the erection of

one building, and Finance & Mortgage Corporation, of which he was a bondholder, was engaged in the erection of another building.

By article first of the trust instrument the grantor transferred to petitioner and the trust company shares of stock in Jane Holding Corporation, bonds of Finance & Mortgage Corporation, and all rights and interests he had in and under any agreement for the purchase of bonds of Finance & Mortgage Corporation and in and under any agreement relating to the Arcade Building Enterprise.

Article second of the trust instrument provided as follows:

* * * the Trustees, acting either as Trustees of the trust estate created hereby, or, independently of said trust estate as the agents and attorneys in fact (appointed hereby) of said Edward Mallinckrodt, and in his name,—or acting in both such capacities,—are hereby expressly authorized and empowered, in and according to their absolute discretion, and not only in respect of said Arcade Building Enterprise and of the securities above described as constituting the initial trust estate created hereby, but also in respect of all other or additional trust assets which may at any time come into their charge as Trustees under this indenture, to exercise as full and complete powers of control, management, and disposal in all respects, as the Trustees might have exercised had they been themselves the absolute owners of the trust estate; * * *

By the terms of article third of the trust instrument, the trustees were directed to apply the income of the trust first to the payment of taxes and administration expenses and, second, to the payment of subscriptions for bonds of Finance & Mortgage Corporation and on debts secured by any property of the Jane Holding Corporation or incurred by petitioner's father, the trustees or the Jane Holding Corporation, in connection with the acquisition, construction, and completion of the Arcade Building. Article fourth of the instrument directed the trustees, after the debts, obligations, and burdens described in article third had been fully paid and satisfied, to pay to petitioner's wife out of the net annual income of the trust the sum of $10,000 per annum until the death of the petitioner, or during her life if she should predecease him, and upon his request to pay to him the remainder of the net income for and during his life. The article further provided that all of the net income not so paid to the petitioner at his request during any one calendar year should accumulate during the period of such current year and at the end thereof should become a part of the principal of the trust estate, subject to such further disposition as was therein provided for the principal of the trust estate. The article also contained directions for the disposition of the principal of the trust in favor of petitioner's wife, the children, and other descendants of petitioner in the event the trust should not terminate during petitioner's lifetime, or in the event he failed to exercise the testamentary power of appointment hereinafter referred to.

Article fifth of the trust instrument provided that, subject to the provisions of article third, the trustees might, upon the written request of petitioner during his lifetime, but subject to the approval of both trustees, convey or pay to petitioner from time to time such portions of the principal of the trust estate as might seem wise to the trustees to distribute to petitioner for his benefit or that of his family. This article contained similar provisions for partial distributions for the support, maintenance, or other welfare of beneficiaries after the death of the petitioner.

Under article eighth the petitioner was given a general power of appointment by will over the property comprising the trust estate. Article ninth gave petitioner power by written instrument executed and delivered to his cotrustee during his life or by will to appoint his successor trustee in case he should cease to act as trustee by reason of death, resignation, or other cause.

Article twelfth provided for termination of the trust during the life of petitioner at the discretion of the trustees in case they should decide such earlier termination to be advisable or desirable in the interest of the Arcade Building Enterprise or for any other reason which would be in the interest of the estate then held in trust or of the beneficiaries. The article further provided that such decision, evidenced in writing signed by the trustees and lodged with the trust company should *ipso facto* end the trust and that the trustees should thereupon transfer, deliver, and pay to petitioner absolutely all of the assets and property constituting or belonging to the trust estate, subject to reservations for the satisfaction of outstanding obligations.

Edward Mallinckrodt, Sr., with his two brothers, founded the Mallinckrodt Chemical Works in 1867. He was also one of the founders of the trust company. At the time of the creation of Trust No. 3660, the petitioner's father had already given petitioner a great deal of property, including a controlling interest in the Chemical Works. At that time the petitioner had three sons, and his father, in creating Trust No. 3660, stated that his purpose in doing so was to provide for the petitioner's children and grandchildren.

By the end of 1933 the debts, obligations, and burdens referred to in article third of the trust agreement and relating to the Arcade Building Enterprise had been discharged. Thereafter and during each of the years 1934 through 1937 the trustees paid to the petitioner's wife out of the annual income of the trust the sum of $10,000. In her income tax returns for the respective years she reported as income the taxable portion of such sum and paid the tax due thereon.

During 1934 and 1935 the petitioner did not request or receive any of the income of the trust. During 1936 two distributions totaling

$19,075.82 were made to him. One for $4,075.82 was made on December 4, 1936, pursuant to the request of the petitioner contained in a letter from him to the trust company dated March 31, 1936, which reads as follows:

*In re: Your T. D. No. 4459*

Gentlemen:

In the above numbered trust Mrs. Mallinckrodt is the sole beneficiary. On account of certain securities failing to pay dividends the net income from the above trust is not sufficient to meet her requirements. It is my desire that the net income from the above trust available to Mrs. Mallinckrodt shall amount to $10,000.00 per annum. To accomplish this purpose you are authorized and requested to transfer to this account, from time to time, an amount sufficient to make said net income equal $10,000.00, from the so-called family trust numbered 3660 on your records. As such funds are so transferred you will advise me and I will sign and return necessary receipts. I understand that such transfer will be equivalent to distributing to me income to the amount so transferred.

The other distribution, of $15.000, was made on November 19, 1936, pursuant to the request contained in a letter from the petitioner to the trust company dated November 18, 1936, in which petitioner directed that said amount be distributed to certain educational and charitable organizations therein named. Of the $15,000 distribution, $5,238.63 represented taxable income and was reported by petitioner in his return for 1936. Of the $4,075.82 distribution, $1,338.60 represented taxable income but was not reported by petitioner in his return. On December 3, 1937, a distribution in the amount $3,109.14 was made to petitioner from the income of the trust for 1937 and applied by the trust company in accordance with the directions contained in his letter of March 31, 1936. Of said distribution, $1,288.04 represented taxable income but was not reported by petitioner in his return.

Pursuant to the provisions of the trust instrument, the trustees transferred on December 31, 1935, to the principal of the trust the net balance of the undistributed income at December 31, 1934, in the amount of $438.770.42, and the undistributed income for 1935 of $241,-377.25. At the end of 1936 and 1937, they also transferred to principal the undistributed income of those years in the amounts of $206,-801.16 and $220,317.69, respectively. The foregoing amounts of undistributed income consisted partly of taxable income and partly of nontaxable income.

In addition to filing fiduciary returns of income for the trust for the years 1934 through 1937, the trustees filed income tax returns with respect to the undistributed taxable income of the trust and paid the taxes shown on the returns. In determining the deficiencies involved herein, the respondent determined that the petitioner had complete and full control over the corpus of the trust; that under the terms of the trust instrument taxable income of the trust in excess of

the amount distributable to petitioner's wife was available to petitioner and subject to his unfettered command; and that such income therefore was taxable to petitioner. The respondent accordingly included in the petitioner's taxable income the amounts of $54,666.26, $52,075.09, $74,015.23, and $102,638.52 for 1934, 1935, 1936, and 1937, respectively.

## OPINION.

It is the contention of the petitioner that, since the income here in question was trust income, and since by reason of his failure to exercise his right to take it for himself it was accrued and held for future distribution pursuant to the terms of the trust instrument, the said income was, under sections 161 and 162 of the Revenue Acts of 1934 and 1936, taxable to the trust, not to him, and, further, that section 22 (a) of the said acts may not be invoked in derogation of the express provisions of sections 161 and 162. It is the contention of the respondent that, since the petitioner had very substantial rights over the trust corpus and the unrestricted right to request and receive all of the income, except $10,000 per annum payable to his wife, the undistributed income was taxable to him under section 22 (a), even though he did not actually receive it.

In section 161 it is provided that the tax imposed upon individuals shall apply to the income of estates or trusts and shall be computed upon the net income of the estate or trust and paid by the fiduciary "except as provided in section 166 * * * and section 167." Section 162 defines the net income upon which the tax under section 161 is to be computed and provides for the deduction of income which is to be distributed currently to the beneficiaries and the income which in the discretion of the fiduciary is properly paid or credited during the year to the beneficiaries. With respect to the income so deducted, it is specifically provided that the amounts so allowed as deductions must be included in computing the net income of the beneficiary. By reason of the exception contained in section 161 in respect of sections 166 and 167, there is excluded from taxation to the trust and taxed to the grantor the income of a trust where the grantor has retained the power to revest or retake unto himself the corpus, or has retained similar rights and powers with respect to the income of the trust.

From the language of sections 161, 162, 166, and 167, *supra*, it would seem that they supply a complete, ultimate, and exclusive plan or method whereunder and whereby the income of estates and trusts is taxed, in that the income is, under section 161, taxed to the trust and to the trust alone, except that where distributed or distributable to beneficiaries it is, under section 162, taxed to them, or, in the instances prescribed in sections 166 and 167, it is taxed to the grantor. Our attention has been called to no exception specifically expressed in the

statute, and we have found none. That such is not the law, however, was settled by the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331, wherein the Court concluded and held that by reason of the dominion and control had and retained over the trust property, the wide powers in respect thereto, the uses to which the income was to be put, and the close family relationship between the grantor and those directly to be benefited, the grantor was the owner of the trust corpus and the income therefrom was his income "for purposes of section 22 (a)."

The petitioner argues that *Helvering* v. *Clifford, supra,* merely enlarges the scope of sections 166 and 167 and has no "application to the taxation of income from a trust to a person other than the grantor." Beyond the bare fact that the person taxed in *Helvering* v. *Clifford* happened to be the grantor, we find nothing in the language of the Court, nor in the thoughts expressed, on which such an argument might reasonably be based. The determination turned on the ownership of the property and the income therefrom within the meaning of section 22 (a), *supra,* and the fact that the taxpayer was the grantor of the trust was of importance and significance only in so far as it featured or aided in defining or describing his interest in the property producing the income in question. Furthermore, looking to the structure of the statute, it is to be noted that section 11 imposes the tax generally on the net income of every individual and section 22, defining gross income, is descriptive of the broad field covered by the tax so imposed, while sections 161, 162, 166, and 167, *supra,* are in the nature of excepting provisions specifying a particularized or different treatment for a part of the general field. It would be strange construction indeed to say that the application of the primary or general provisions of a statute is in reality a broadened application of the excepting provisions, and particularly so in the case of *Helvering* v. *Clifford,* wherein the Supreme Court, having found the income taxable under section 22 (a), expressly found no need to consider the applicability of section 166, and, since it did not mention sections 161 and 162, apparently did not consider it of any importance that under literal application of those sections the trust or the beneficiaries, and not the grantor, were liable to tax on the income in question, except and unless section 166 or section 167 should apply. In any event, however, the argument here made has already been considered and, contrary to the contention of petitioner, it has been decided that the applicability of section 22 (a) under the rule announced in *Helvering* v. *Clifford, supra,* is determined by current or existing rights in and power over property and the income therefrom and not upon prior ownership or the nature or character of an interest previously held. *H. S. Rich-*

*ardson*, 42 B. T. A. 830; affd., 121 Fed. (2d) 1; *Ella E.. Russell*, 45 B. T. A. 397; and *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784.

For the purpose of determining the net income upon which "every individual" is taxed, there is included in gross income, under section 22 (a), all "gains, profits, and income derived * * * from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest. rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." That the petitioner by his father's grant to trust became the owner of an interest or estate in the trust corpus is, in our opinion, not open to doubt, *Camelia I. H. Cerf*, 1 T. C. 1087, and to the extent that income was derived from or grew out of such interest or estate within the meaning of section 22 (a) it was his income and taxable not to the trust but to him. *Helvering* v. *Clifford, supra*. His position is, for instance, wholly different from that of the donee or assignee in *Lucas* v. *Earl*, 281 U. S. 111, where the earning of the income by the grantor or assignor through the rendition of services was prerequisite to any vesting of ownership in the assignee; in *Harrison* v. *Schaffner*, 312 U. S. 579, where the assignment was by its terms in the form of a promise to give stated dollars from the income to be derived by the assignor from her interest in a trust; and in *Helvering* v. *Horst*, 311 U. S. 112, and *Helvering* v. *Eubank*, 311 U. S. 122, where the assignor, grantor, or donor assigned or conveyed nothing beyond the right to receive the income when earned or realized, and did not, as in this case, assign or grant the property in trust or otherwise from which the income was thereafter derived.

Our question, then, is whether petitioner's powers over and rights in and to the trust corpus and the income therefrom were such as to make all of the income over and above the $10,000 payable to his wife his income within the meaning of section 22 (a), *supra*. Under the trust instrument, the petitioner and his cotrustee, the St. Louis Union Trust Co., were authorized and empowered to exercise "as full and complete powers of control, management, and disposal" of and over the trust property as they might had they been "the absolute owners of the trust estate." Not only did petitioner currently have the powers enumerated but also the continued exercise of his wishes and desires in the control, management, and disposal of the properties was assured, in that he had the power, during his lifetime and at death by will, to name his successor trustee. Upon written request and with the consent of his cotrustee, he had the right to take as his own the corpus of the trust, or any portion or portions thereof

and in that manner to terminate the trust during his lifetime. Currently and without any restriction whatever, he could take as his own the entire income of the trust in excess of the $10,000 payable to his wife. It is true that all of the income not drawn by him was, under the terms of the trust, to be added to corpus at the end of the year, but, as was true in the *Clifford* case, his taking or leaving of the income was of little moment to him, since it was still marked for the ultimate use and enjoyment of members of his intimate family group, and even then it was not beyond his power, since pursuant to the terms of the trust he had the absolute right to dispose of the entire trust corpus, including any of the undrawn income, by will. Under that power he might name his own estate as beneficiary, see *Morgan* v. *Commissioner*, 309 U. S. 78, or leave the property to strangers, according to his own desires. For a case wherein it was held that the power under a trust to appoint corpus and accumulated income among nieces and nephews upon termination of the trust fourteen years hence was sufficient to make the trust income that of the holder of the power under section 22 (a), see *Lura H. Morgan*, 2 T. C. 510.

Certainly with such powers and rights in and to the trust corpus, and particularly to the income produced, there can be no question that if petitioner were the grantor he would be taxable on the income under section 22 (a), *Helvering* v. *Clifford*, *supra*, and petitioner makes no claim to the contrary. The fact that the powers and rights are not the retained powers and rights of a grantor but were received by petitioner as beneficiary of the trust and by grant from his father makes them no less substantial. As in the *Clifford* case, the rights and powers of the petitioner in and to the trust corpus and the income therefrom did not include all of the incidents of ownership, but we think it may definitely be said that the benefits held by and belonging to petitioner, directly or indirectly, were such as to require the conclusion that he was the owner of the income here in question, within the meaning of section 22 (a), *supra*. In *Corliss* v. *Bowers*, 281 U. S. 376, the Supreme Court said:

But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. * * * Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given *by assent or by failure to express dissent*. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * * [Italics supplied.]

While in *Corliss* v. *Bowers* the Court was considering and there determined the validity of subsections (g) and (h) of section 219 of the

Revenue Act of 1924, later sections 166 and 167, *supra*, the thoughts there expressed are equally enlightening and forceful in determining the applicability of section 22 (a) under the doctrine of *Helvering* v. *Clifford*, *supra*. Considerations which justified and sustained the enactment of section 167 may also indicate the applicability of section 22 (a) in accomplishing the same end, namely, the taxation of income to the holder or recipient of the actual benefit for which the tax is paid.

In *Whitely, Jr.* v. *Commissioner*, 120 Fed. (2d) 782, affirming 42 B. T. A. 402, wherein the petitioner had the power under the trust instrument to have the entire income of the trust applied to the support of his minor children and it was held that, the petitioner being the grantor, the entire income of the trust was taxable to him under section 167, the court further held that such unfettered command over the income, namely, the right to apply it in its entirety to the satisfaction of the grantor's obligations to support his children, was, in its opinion, alone sufficient to make the income taxable to the grantor under section 22 (a). In that case there were some limitations on the uses to which the income might be put, while in the instant case there are no restrictions whatever.

In *Jergens* v. *Commissioner*, *supra*, the petitioner was not the grantor but the trustee. By a grant from the grantor he had the power to alter or amend the trust instrument and to withdraw all or any part of the trust corpus. The court said:

In Section 22 (a) of the respective Revenue Acts here applicable, Congress intended to use the full measure of its taxing power. * * * *It is the long-settled course of tax jurisprudence that such control over income warrants the imposition of the tax incidence of that income upon the person who commands its disposition whether he takes it for himself or not.*[2] This principle is not to be limited in trust cases to situations where the grantor has retained controlling powers; the determinative consideration is the existence of actual dominion over the property whether it is retained or acquired. * * * [Emphasis supplied.]

[2] *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Corliss* v. *Bowers*, 281 U. S. 376; *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Clifford*, 309 U. S. 331; *Helvering* v. *Horst*, 311 U. S. 112; *Harrison* v. *Schaffner*, 312 U. S. 579.

While not too clearly put, there is some argument on brief that to tax petitioner on the income not drawn would be to impose upon him without his consent and against his wishes a burden in respect of a benefit which he in fact does not enjoy. It may be that the petitioner had in mind the rule considered and applied in *First National Bank of Portland*, 39 B. T. A. 828, and *A. P. Giannini*, 42 B. T. A. 546. In the first of these cases, it was held that the beneficial interest under a trust might be wholly disclaimed, and, if so, the income therefrom is not taxable to the named beneficiary. In the second case, the taxpayer at all times refused to accept or to take the compensation voted to him by the bank of which he was president. We have no such situation here.

The petitioner from the beginning accepted the rights and privileges granted to him under the trust instrument and entered upon the enjoyment thereof. The rights and powers held by him in the trust property and the income produced were not merely "naked powers," as he suggests in his brief, but, to use the words of the Supreme Court in the *Clifford* case, were so substantial that he "cannot be heard to complain that he is the 'victim of despotic power when for the purpose of taxation he is treated as owner altogether.' See *DuPont* v. *Commissioner*, 289 U. S. 685, 689." The income was his without restriction, to use according to his own volition, and, even if not withdrawn currently, he could still dispose of it in any manner that he saw fit by his will. To borrow from the phraseology of *Walter L. Ferris*, 1 T. C. 992, he may not avoid taxation by turning "his back upon funds that were his for the asking."

*Elizabeth S. Sprague*, 8 B. T. A. 173, cited by the petitioner, does support the result for which he contends, but that case was decided prior to both *Helvering* v. *Clifford, supra*, and *Corliss* v. *Bowers, supra*, and is not now controlling.

*Issue 2.—Realization of Taxable Gain by Petitioner on Account of His Dealings with the Property of Trust No. 4363.*

### FINDINGS OF FACT.

Sometime prior to 1921 the petitioner and his father had several discussions about a program for making contributions for charitable, educational, and religious purposes. It was his father's desire that the petitioner have some experience and training in wise giving and in the administration of trust funds for charitable purposes. Accordingly, by a trust instrument executed January 6, 1921, the petitioner transferred to the St. Louis Union Trust Co., as trustee, 1,175 shares of preferred stock in National Ammonia Co. and 1,050 shares of stock in Laclede Steel Co. Both blocks of stock were furnished by petitioner's father. The cost basis to the petitioner's father and the fair market value on January 6, 1921, of the stock in National Ammonia Co were $117,500. The cost basis to the petitioner's father of the stock in Laclede Steel Co. was $86,233.22, and the fair market value of the stock on January 6, 1921, was $107,100.

The trust instrument provided in part as follows:

SECTION #1. The said Trustee shall take possession of all the securities constituting the trust estate, and thereafter any and all other securities which may hereafter be delivered unto it as a part of the trust estate herein created, and shall manage and control the same, with power and authority to sell, exchange, mortgage, pledge, assign, transfer or otherwise dispose of all or any part thereof or any interest therein, upon such terms and conditions as it shall see fit; with power to invest and reinvest all cash, forming at any time part of the trust estate, by the purchase of such stocks, bonds, securities or other property as it

shall believe to be desirable investments for the trust estate; and with power to make and change such investments from time to time, according to its judgment, and whenever desirable. After paying all reasonable costs and expenses incurred in the administration of the trust estate it shall, unless otherwise directed as hereinafter provided, collect and accumulate the net income, add the same to the corpus or capital of the trust estate annually, and invest it as a part thereof, until the termination of this trust.

SECTION #2. Unless sooner terminated by a complete distribution of the entire corpus of the trust estate and accumulated income, pursuant to the power hereinafter reserved to the Donor, to require such distribution by the Trustee, this trust shall end upon the death of the said Edward Mallinckrodt, Jr., Donor herein, and thereupon the entire corpus and accumulated income then in the possession of the Trustee shall be paid and distributed unto such religious, charitable, scientific or educational organization or organizations, now in existence, as the said Donor may by last will and testament duly appoint; or in default of such appointment, or if the Donor shall die intestate this trust shall cease and determine, and the corpus of the trust estate and accumulated undistributed income shall be paid and distributed unto the Harvard University, free from trust.

SECTION #3. The Donor hereby expressly reserves unto himself the power at any time or times during his life, by his written direction or directions to the Trustee, to require a partial or complete distribution of the corpus or capital of the trust estate, or of the income therefrom, or of both, unto such religious, charitable, scientific or educational organizations, now in existence, as he may nominate. Any such donation or distribution of income or corpus to or for any such religious, charitable, scientific or educational organization shall be used and applied as the Board of Directors or Governors of such institution may from time to time determine, unless the Donor in his written direction to the Trustee or by his last will shall decree the particular purpose or purposes for which the corpus or income so distributed shall be used by such institution; but in no event shall any portion of the income or corpus of the trust estate herein created be used for any other purposes than religious, charitable, scientific or educational uses, nor shall any gift of any portion of the income or corpus of the trust estate be made to or for the use and benefit of any corporation, society or institution except such as shall be operated exclusively for religious, charitable, scientific or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benfit of any private stockholder or individual.

SECTION #4. The Donor hereby reserves the right from time to time to deposit other securities or property with the Trustee, to thereafter become a part of the trust estate herein created, subject to the terms and conditions of this Indenture, and for the ultimate distribution unto some religious, charitable, scientific or educational institution or institutions as hereinbefore provided.

The petitioner reserved no power to revoke the trust nor was any provision made for a successor trustee in event the trust company resigned or declined to serve. Subsequent to January 6, 1921, and prior to July 6, 1935, the petitioner made various transfers of additional property to the trust, the cost basis to the petitioner being $421,638.25.

Petitioner's father died in 1928, leaving a will wherein he created a charitable trust. This will had been interpreted as permitting appointments to be made only to institutions in the State of Missouri.

Because of this limitation, the petitioner conceived the idea of "balancing up" by making appointments out of Trust No. 4363 to institutions outside the State of Missouri. He was advised that such appointments could not be made by him by will without the appointed institutions incurring a heavy Missouri inheritance tax. He was also aware that under the instrument creating Trust No. 4363 the entire funds of that trust would, upon his death and unless appointed otherwise by will, pass to Harvard University, an institution situated outside of Missouri, which thereby would incur the Missouri inheritance tax with respect to such funds. In this situation the petitioner began a series of extended conferences with the chairman of the board of directors of the trust company, his counsel, and persons connected with Harvard with a view to working out an arrangement for avoiding the Missouri inheritance tax with respect to the funds of the trust. Several plans were considered. One plan was for the trust company to resign as trustee and have a Massachusetts trust company appointed as a successor trustee and have it remove the trust assets to Massachusetts. Since the trust instrument contained no provision respecting the resignation of the trustee and the appointment of a successor trustee, the trust company and the petitioner were advised that the trust company could only resign as trustee and receive its discharge in an equity proceeding in the State of Missouri. The petitioner and the trust company wanted to effect the arrangement without a court decree. In view of that situation and of the belief that a Missouri court would not or could not appoint a nonresident trust company as trustee, that plan was abandoned. Another plan considered was for the petitioner to designate Harvard as the beneficiary of the trust and to terminate the trust by making a complete distribution to Harvard. This plan was not adopted, since the petitioner had not concluded that he wanted the entire estate transferred to Harvard. It was finally decided that petitioner terminate the trust and create a new trust, with a Massachusetts trust company as trustee. Petitioner was advised that a written release would be required from Harvard, that institution being the only possible beneficiary specifically named in the trust indenture.

Thereafter, and on June 13, 1935, Harvard, as party of the first part, petitioner, as party of the second part, and the trust company, as party of the third part, entered into an agreement which provided in part as follows:

WHEREAS, heretofore, by his Indenture of Trust dated January 6, 1921, Second Party transferred certain securities and later transferred additional securities, to the Trustee, for the purposes of said trust, reserving a power during his life to appoint as beneficiaries of said trust such religious, charitable, scientific or educational organization or organizations then in existence, as Second Party may by last will and testament duly appoint, or in default of such appointment

or if Second Party shall die intestate, then the corpus of the trust estate and accumulated and undistributed income thereof, was directed by said Indenture of Trust to be paid and distributed to "Harvard University"; and,

WHEREAS, the said Trustee of said trust was not by said Indenture of Trust granted any power to select or appoint any beneficiary or beneficiaries of any part of said trust estate, but the selection of such beneficiaries and the amounts to be paid or distributed to each, was left entirely to the discretion and desire of Second Party, and First Party constitutes the only organization heretofore definitely named by Second Party as a beneficiary contemplated by Second Party to receive, upon the contingencies stated in said Indenture of Trust, any part of said trust estate now remaining on hand; and,

WHEREAS Second Party desires to make other disposition of the assets now constituting the trust estate and to that end desires the relinquishment by First Party of all its claims to said trust estate and the assets thereof and of all its interest of every description under and by reason of said trust indenture;

Now, THEREFORE, in consideration of the sum of One Hundred Thousand Dollars ($100,000) paid to First Party by Second Party coincident with the execution and delivery of this instrument and out of funds of Second Party not a part of the assets of said trust estate, the receipt of which amount by First Party for the purposes and subject to the conditions elsewhere stated by Second Party, is hereby acknowledged, it is hereby mutually agreed and covenanted between the respective parties hereto, that in consideration of said payment, First Party hereby waives and releases all of its right and claim of every kind, to receive any benefit or distribution out of the assets now constituting, or which may hereafter and prior to the cancellation or termination of said trust constitute, any part of said trust estate; it hereby covenants with Second Party and with the Trustee and each of them, that First Party will not hereafter at any time make or assert or seek to enforce any claim of right to participate hereafter in any of said assets, or any claim against Second Party or his executors or administrators or against the Trustee, based upon or arising out of or in relation to said Indenture of Trust or the trust estate thereby created; and First Party hereby agrees and consents that said trust and said trust estate may be dealt with by Second Party and by the Trustee in all respects as if First Party did not possess and never had possessed any interest whatsoever under said trust or in said trust estate.

First Party does not intend hereby, and shall not be construed, to assume any obligation to take any further action or to produce any result in respect of the subject matter hereof, but First Party has no objection, so far as any interest of said First Party is concerned, to any action with respect to said trust or trust estate being taken by Second Party and by the Trustee or by either of them.

Payment of the $100,000 to Harvard was made by petitioner on June 14, 1935.

On July 6, 1935, the petitioner, as party of the first part, and the trust company, as party of the second part, executed an instrument which provided in part as follows:

WHEREAS, First Party is advised that consequent upon the execution and delivery of said instrument by Harvard University, the trust estate now on hand under said Indenture of Trust is held solely at the will and subject to the wishes of First Party, and still constitutes in equity his property freed from all claim thereon of Harvard University, and that with said University eliminated, said trust is too indefinite in its terms to be capable of judicial enforcement, and that therefore said trust may be revoked, cancelled and annulled by mutual agreement

thereto between First Party and the Trustee, and this instrument is intended to evidence such agreement:

Now, THEREFORE, in consideration of the premises, it is hereby mutually agreed between the parties hereto, as follows:

FIRST: First Party hereby requests the Trustee to sign this instrument thereby consenting and agreeing to a revocation and annulment of the grant evidence by said Indenture of Trust and to a termination of said trust so far as concerns the trust estate now on hand, so that upon the distribution and return of said trust estate to First Party, pursuant to this instrument, the life of said trust shall stand terminated.

SECOND: Pursuant to said request, the Trustee hereby consents and mutually agrees with First Party, that the grant evidenced by said Indenture of Trust does hereby stand revoked and annulled, and that the trust thereby created does hereby stand terminated, upon the execution and delivery of this instrument.

THIRD: In consideration of the protection hereinafter covenanted by First Party to be furnished to the Trustee, the Trustee hereby agrees with First Party that immediately following the execution and delivery of this instrument, the Trustee will account for, transfer, assign, pay, deliver and return to First Party or his written order, each and all of the assets then constituting the principal and undistributed income of said trust estate, less the reasonable charges and expenses due to the Trustee in relation to said trust estate.

FOURTH: In consideration of the premises, First Party hereby agrees to indemnify, protect and save harmless the Trustee, its successors and assigns, from all loss. cost, liability and expense to which it or they may now or hereafter be subjected in connection with the said turning over and return to First Party of the assets constituting said trust estate or arising in any way out of the fact that the Trustee has, at the request of First Party and pursuant to his wishes, joined in the execution and delivery of this instrument, and has pursuant hereto returned, transferred, assigned, and delivered to First Party or his written order, all of the assets constituting said trust estate. This obligation of First Party is intended to also bind his executors and administrators and the distributees of his estate.

While the petitioner had informed the trust company what he proposed to do with the assets of Trust No. 4363, he had made no agreement or contract with it that he would make any specific disposition of them.

During the period from January 6, 1921, when the trust was created, until July 6, 1935, the trust received net income totaling $633,716.53, of which amount $512.192.65 represented net taxable income. The trust company never filed any Federal income tax returns with respect to the income of the trust, and, so far as disclosed, the petitioner never included any portion of it in any of his income tax returns. During the period from January 6, 1921, to July 6, 1935, the trust company, upon orders of the petitioner, disbursed to various charitable, religious, and educational organizations a total of $282.368, all of which was charged against the income of the trust except $30,000, which was charged against principal. None of the distributions was ever claimed by the petitioner in any of his income tax returns as a contribution. During said period none of the trust income, other

than for expenses and commissions of the trustee, was ever taken out of the trust except for the purpose of contributions to religious, charitable, or educational organizations. The total fair market value of the assets in the trust on July 6, 1935, was $882,264.21, which, after deduction of $22,421.35 paid to the trust company as its commission on the distribution of the property to the petitioner, left a remaining fair market value of $859,842.86.

Immediately upon the execution of the instrument of July 6, 1935, the petitioner directed the trust company to open an account known as and carried on the books of the trust company as Special Agency Account, T. D., 11,158, sometimes hereinafter referred to as Agency Account No. 11,158. By arrangement with the petitioner, the trust company transferred to the agency account all of the assets formerly in the trust except assignments of advances which the petitioner had made to certain other trusts amounting to $54,694 and which were without value. The agency account has been continued and is still active.

Following the creation of the agency account the trust company collected the income from the assets therein, collected sums falling due by reason of the maturity or the calling for redemption of securities, and in some instances invested in other securities sums collected by it. It also managed some real estate which was acquired upon the foreclosure of a note contained in the agency account.

On December 20, 1935, the petitioner executed and delivered two instruments, respectively, to Harvard University and to the New England Trust Co., as trustee, intended by him to supplement each other and to form a part of the same transaction. By the instrument executed by him and Harvard he transferred to the latter, outright, securities of a par value of $331,400 and cash in the amount of $80,000. By the other instrument the petitioner transferred to the New England Trust Co., of Boston, Massachusetts, securities of a par value of $325,000 and cash in the amount of $101,618.40. The terms of this trust instrument were similar to those of the trust instrument in Trust No. 4363, except that under the instrument of December 20, 1935, the petitioner reserved the power, in event all the trust property had not been distributed during his lifetime and he had failed to make appointment of it by will, to authorize, by will, two of his sons, jointly or severally as he might designate in his will, to make appointments of it. The securities and cash transferred to Harvard and the securities and cash transferred to the New England Trust Co. were from Agency Account No. 11,158 and constituted all of the assets of that account except a small amount of cash, some mortgage notes, and certain real estate acquired by foreclosure under a mortgage note. Such assets or the proceeds thereof, together with the

income therefrom, have not been used by petitioner, but still remain in the agency account.

The income that was collected by the trust company in the operation of the agency account during the period from July 6, 1935, until the end of 1935 and during the years 1936 and 1937 was reported by the petitioner in his income tax returns for the respective years. No part of said income was withdrawn by petitioner or paid out by the trust company upon his orders except for charitable donations. The agency account was treated by the trust company as a charitable account and for its services in connection therewith the trust company charged a commission of 2½ percent of the income collected, the rate charged on income collected for charitable purposes, instead of 5 percent, the rate charged on the regular agency accounts.

In his income tax return for 1935 the petitioner did not report as taxable income any amount by reason of his dealings in or with the property in Trust No. 4363. The contributions shown in the return totaled $597,283.21 and were to Harvard University. Due to the statutory limitation of 15 percent for deductions for contributions, he deducted therefor only $57,992.47. In addition to the $100,000 paid out of petitioner's personal funds to Harvard pursuant to the agreement of June 13, 1935, the petitioner made other contributions to Harvard during the year in the total amount of $4,647.15. His contributions to other charities totaled $17,970. Except for the $100,000 paid to Harvard under the agreement of June 13, 1935, the above $597,283.21 shown on the 1935 return as contributions consisted principally, if not wholly, of the cash and securities paid or delivered to Harvard from Agency Account No. 11,158.

The respondent determined that, by reason of the agreements entered into by petitioner, Harvard, and the trust company and by petitioner and the trust company, Trust No. 4363 had been revoked and annulled and that by the revocation and annulment the petitioner derived a taxable gain of $338,204.61, computed as follows:

Fair market value of assets received by petitioner from the trust on
  July 6, 1935_____ $859,842.86
Less: Cost of Assets contributed by petitioner to the
  trust_____ $421,638.25
Payment to Harvard_____ 100,000.00
                                                      _____ 521,638.25
                                                                  _____
                                                                  338,204.61

In determining the deficiency for 1935, the respondent increased the petitioner's taxable income by said $338,204.61.

### OPINION.

The petitioner contends that, despite the execution of the agreement with Harvard University on June 13, 1935, the execution of the agreement with the trust company on July 6, 1935, and the terms of the two

instruments, there was no intention that the funds and property of Trust No. 4363 should or would become his personal property, that the said property continued to be impressed with charitable uses, and that he realized no taxable gain by reason of the execution of the agreements mentioned or the setting up by the trust company of Special Agency Account No. 11,158. It is the claim of the respondent that by the terms of the instrument of July 6, 1935, the funds and property of Trust No. 4363 were to become and did become the funds and property of the petitioner, that the placing of the funds and property in Special Agency Account No. 11,158 carried the terms of the agreement into effect, and that the petitioner thereby realized gain equal to the difference between the fair market value of the assets received and the cost of the assets contributed, including the $100,000 paid to Harvard by the petitioner as consideration for the execution by Harvard of the agreement of June 13, 1935.

We think the record plainly shows that the petitioner had no intention of acquiring as his own the funds and property of Trust No. 4363. and further that he had no intention of personally benefiting in any way therefrom. The various acts and agreements were brought about by his desire to remove the trust and the trust property from the State of Missouri so that any of the trust funds passing by appointment at his death would not be subject to Missouri inheritance tax but would remain intact for the charitable or educational purpose designated. There can be no question, however, that if the agreement of July 6, 1935, between him and the trust company could and did become effective so that the trust was revoked, he did acquire the property for his own, and if that be true we see no escape from the conclusion contended for by the respondent. Our question then is whether, by the acts and agreements by and among Harvard, the petitioner, and the trust company, Trust No. 4363 could be and was revoked so that the trust property did become the property of the petitioner. The parties apparently proceeded on the premise that a charitable trust could be modified or revoked by agreement of the settlor, the trustee, and the named beneficiary or beneficiaries, whether the interest of such beneficiary or beneficiaries was contingent or vested. A private trust may be revoked by agreement of all interested parties, including the beneficiaries, so as to terminate the trust and revest title to the trust property in the settlor. *Helvering* v. *Helmholz*, 296 U. S. 93. Charitable trusts have certain characteristics, however, which are fundamentally different from those of private trusts. A general rule with respect to private trusts is that the beneficiaries must be definite and care must be taken to avoid violation of the rule against perpetuities. In the case of charitable trusts the beneficiaries are indefinite and the beneficial interest in a

charitable trust "is always inalienable as long as the trust continues, since there is no beneficiary who has an interest which he can transfer, but the property is to be devoted to the accomplishment of the designated purposes." Sec. 365, vol. 3, Scott on Trusts. Furthermore, in the case of charitable trusts it seems to be well settled law that a charitable trust, once it has been validly created, can not be revoked by the settlor unless he has by the terms of the trust reserved the power to do so. Restatement of the Law of Trusts, sec. 367, Scott on Trusts, vol. 3, pp. 1969, 1970. In the instant case, it is not disputed that Trust No. 4363 was a charitable trust. The petitioner, settlor, retained no power to revoke or modify the trust so as to revest the property in himself or to defeat the purposes for which the trust was created. At the most, the interest of Harvard was contingent, and, whether vested or contingent, its participation in the agreement of June 13, 1935, could have no effect on the existence of the trust or serve in any way to bring about its termination. The agreements among the petitioner, Harvard, and the trust company were therefore ineffective to vest or revest the trust property or any interest therein in the petitioner. The funds and property of Trust No. 4363 remained impressed with and subject to the use or uses for which the trust was established. See and compare *Mott* v. *Morris*. 249 Mo. 137; 155 S. W. 434; and *Women's Christian Association* v. *Campbell*, 147 Mo. 103; 48 S. W. 960, in the latter of which the court said:

\* \* \* Where lands have been donated, and become vested in a trustee, as herein, for charitable uses, neither the donor nor his or her heirs can ever reclaim it, and all right and interest therein or thereto is gone forever. \* \* \*

The determination that the petitioner realized gain as the result of the agreements and acts of the three parties with respect to the funds and property of Trust No. 4363 is accordingly rejected.

In the light of our conclusions above as to the ownership of the trust property, the respondent's contention in the alternative, that the income of Trust No. 4363 for the years 1934 and 1935 was income to the petitioner for those years, is also rejected.

*Issue 3.—Fees and Commissions of Trustees and Expenditures for Investment Advice, Custodian and Collection Services, Services of Financial Secretary, Bookkeeper, and Auditor.*

#### FINDINGS OF FACT.

During the period 1934 through 1937 the petitioner was a large investor in stocks and bonds and derived his income principally from such investments. In managing and endeavoring to conserve his investments, the petitioner from time to time consulted the firm of Loomis-Sayles & Co., of Boston, Massachusetts, and obtained from them advice as to what investments under the then existing condi-

tions ought to be disposed of, what ought to be purchased in their stead, and what investments might be safely and profitably retained. The following is a statement of the petitioner's purchases and sales of securities for the years indicated:

| Year | Purchases | | Sales | |
|---|---|---|---|---|
| | Lots | Cost | Lots | Proceeds |
| 1934 | 25 | $308, 925. 21 | 17 | $309, 670. 47 |
| 1935 | 57 | 840, 095. 21 | 31 | 625, 403. 89 |
| 1936 | 25 | 682, 168. 76 | 34 | 609, 163. 30 |
| 1937 | 37 | 1, 129, 207. 01 | 126 | 1, 730, 515. 30 |

The petitioner also employed the St. Louis Union Trust Co. as custodian of his securities, to collect the income therefrom and to deliver and receive securities in the case of sales and purchases.

The petitioner also employed Adolph Stille during the entire year 1934, and until Stille's death in November 1935, to act as his financial secretary and bookkeeper. The petitioner employed in 1935 C. B. Adams & Co. to make an audit of his accounts and after Stille's death to keep his books, which company continued as petitioner's bookkeeper and auditor during the remainder of 1935 and the whole of the years 1936 and 1937.

In 1928 the petitioner conveyed certain property in trust to his wife and St. Louis Union Trust Co., as trustees. These trusts, which were revocable by petitioner, were known as Trusts Nos. 7073, 7075, and 7076, respectively, and were in existence during 1935, 1936, and for approximately four months in 1937. During their existence they were actually administered by the trustees, who were entitled to receive fees and commissions for their services in administering and managing the trusts. The amount of such fees and commissions were never received by petitioner but were retained by the trustees. The respondent determined that the income of these trusts for 1935 and 1936 and for the period they were in existence during 1937 was taxable to the petitioner.

The following is a statement of the amounts retained by the trustees of Trusts Nos. 7073, 7075, and 7076 for their services and the amounts paid Loomis-Sayles & Co., the trust company, Adolph Stille, and C. B. Adams & Co. for their services as shown above for the years indicated:

| | 1934 | 1935 | 1936 | 1937 |
|---|---|---|---|---|
| Trustees fees and commissions, Trusts Nos. 7073, 7075, and 7076 | | $765. 78 | $843. 47 | $547. 02 |
| Loomis-Sayles & Co | $5, 626. 27 | 4, 347 08 | 5, 723. 44 | 5, 008. 81 |
| Trust Co | 886 00 | 783 86 | 3, 392. 55 | 5, 539. 67 |
| Adolph Stille | 9, 000. 00 | 8, 250. 00 | | |
| O. B. Adams & Co | | 500. 00 | 750. 00 | 1, 250. 00 |
| Total | 15, 512. 27 | 14, 646. 72 | 10, 709. 46 | 12, 345. 50 |

The foregoing amounts, which in each instance were reasonable, were taken by petitioner as deductions in his income tax returns for the respective years. In determining the deficiencies the respondent disallowed the deductions on the ground that neither Trusts Nos. 7073, 7075, and 7076 nor the petitioner was engaged in carrying on a business or trade and that the amounts did not represent ordinary and necessary business expenses.

OPINION.

The petitioner takes the position that he is entitled to deduct the expenditures set out in our findings of fact on the ground that they constituted business expenditures, while the respondent contends that they are not allowable as such. Since the submission of this proceeding, the Revenue Act of 1942 has been enacted. By the provisions of section 121 of that act, which amends section 23 (a) of the Internal Revenue Code and made it applicable to the taxable years under all prior revenue acts, all ordinary and necessary expenses paid or incurred by an individual during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income, constitute allowable deductions from gross income. The expenditures in controversy come within the provisions of section 23 (a), as amended, and are allowable deductions.

Section 121 of the Revenue Act of 1942 also amended section 24 (a) (5) of the Internal Revenue Code, such amendment being made applicable to the taxable years arising under all prior revenue acts. Under section 24 (a) (5) as amended such amounts or portions thereof as are otherwise allowable under section 23 (a), as amended, are not to be allowed where they are allocable to nontaxable income, including interest wholly exempt from tax.

The petitioner's income tax returns were placed in evidence and disclose that during each of the taxable years he received a substantial amount of nontaxable income. So far as the record discloses, the expenditures in controversy related to the receipt of both taxable and nontaxable income, and accordingly a portion thereof was allocable to nontaxable income. Since the parties submitted no evidence bearing directly on the question as to what portion of the expenditures should be allocated to nontaxable income, and in the absence of evidence indicating what would constitute a more reasonable basis for such allocation, we hold such expenditures for the respective years are to be allocated to taxable income and nontaxable income of such years in the proportion that each bears to the total of the taxable and nontaxable income of the petitioner for such years.

*Alternative Issues Relating to Allowances for Contributions.*

By amendment to his answer to the petitioner's amended petition, the respondent avers that, should we determine that petitioner's net income for 1934 should be reduced from that set out in the deficiency notice, we should hold that the allowance for contributions should be reduced in accordance with the provisions of section 23 (o) of the Revenue Act of 1934. In his return for 1934 the petitioner took a deduction of $48,692.88 for contributions. In determining the deficiency for that year the respondent allowed a deduction of $59,219.66. By reason of our holding on issue 3, *supra*, the petitioner's net income will be reduced from the amount determined by the respondent. In view of this the allowance to the petitioner for contributions will, in a recomputation of the deficiency, be reduced to the extent necessary to conform to the provisions of section 23 (o).

In his income tax return for 1935 the petitioner reported contributions of $597,283.21 made to Harvard in that year, but, due to the statutory limitation on deductions for contributions. he claimed as a deduction therefor only $57,992.47. Of the amounts claimed as contributions to Harvard during the year, the $100,000 paid in connection with the signing of the agreement of June 13, 1935, was paid by petitioner from his own funds as distinguished from the funds of Trust No. 4363. He also contributed to Harvard from his own funds during 1935 a total of $4,647.15, but the record is not clear whether this sum was included in the $597,283.21 shown on the return. All other amounts shown on the 1935 return as contributions to Harvard consisted principally, if not wholly, of the cash and securities paid or delivered to Harvard from Agency Account No. 11,158. These latter amounts, being from the property belonging to Trust No. 4363, are not to be taken into consideration in computing the petitioner's deduction for charitable contributions made during the year. Based on allegations in his amended answer, the respondent claims that the $100,000 item should also be excluded, on the ground that it was not a gift but an amount paid in consideration for the signing of the agreement of June 13, 1935. In the light of our conclusions as to the force and effect of the said agreement, it is our opinion and we conclude that the contention is not well founded. The record shows and we have found in our facts that the petitioner during the year 1935, in addition to the $104.647.15 paid from his own funds to Harvard, made charitable contributions amounting to $17,970, bringing his total contributions for 1935 to $122,617.15. That amount, being the total of contributions shown by the record to have been made by

the petitioner in 1935, constitutes the basis for the computation of the 1935 deduction allowable to him for contributions made.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERNHAGEN, *J.*, dissents.

---

MELLOTT, *J.*, concurring: Inasmuch as the Supreme Court has denied certiorari in *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; 320 U. S. 784, in which the trustee was held taxable because he had the "power to withdraw all or any part of the corpus of the trust" created by his wife "to alter, amend, or modify the trust as he saw fit, or to revoke it in whole or in part," I concur in the result reached notwithstanding the substantial doubt which I have that the rule of *Helvering* v. *Clifford*, 309 U. S. 331, should be so extended. It is of course, true, as pointed out in the *Jergens* case, that "control over income warrants the imposition of the tax incidence of that income upon the person who commands its disposition whether he takes it for himself or not." (See cases cited in footnote to the Court's opinion.) If "the determinative consideration is the existance of actual dominion over the property whether it is retained or acquired," then it would seem that this petitioner is being properly taxed upon the income of the trust created by his father.

---

OPPER, *J.*, concurring: I do not think it necessary to resort to the principle enunciated in the *Clifford* case in order to reach the conclusion embodied in the first point. See *Helvering* v. *R. Douglas Stuart*, 317 U. S. 154. Section 162 permits the trust to deduct income which "is to be distributed currently," but contemplates the taxation to the beneficiaries of such income "whether distributed to them or not." I can not believe that the mere refusal of the beneficiary to accept such income in a given year would be sufficient to relieve him of tax liability under the familiar doctrine sometimes called constructive receipt. See *Helvering* v. *Stuart, supra*; *Lelia W. Stokes*, 28 B. T. A. 1245; *Esty* v. *United States*, 63 Ct. Cls. 455. If the acquiescence of the recipient is a condition necessarily implicit in every payment, as I think it is, practically if not legally, cf. *Kate R. De Forest*, 27 B. T. A. 373, 376; *Edson* v. *Lucas*, 40 Fed. (2d) 398, the mere expression of such a condition should not alter the operation of the taxing statute. *Helvering* v. *Helmholz*, 296 U. S. 93. And certainly there can be no distinction in principle between such "unwitty diversities" of the law as the condition precedent of a request on the one hand and the condition subsequent of an acceptance on the other. *Helvering* v. *Hallock*, 309 U. S. 106. Either is founded upon "a right so absolute that it could be said he had turned his back upon

funds that were his for the asking." *Walter L. Ferris*, 1 T. C. 992, 995. As the prevailing opinion adequately demonstrates, *First National Bank of Portland*, 39 B. T. A. 828, and *A. P. Giannini*, 42 B. T. A. 546, do not go to the lengths which would be necessary for a contrary conclusion here, and *Elizabeth S. Sprague*, 8 B. T. A. 173, incorporates principles long since abandoned in the search for a realistic construction of tax legislation.

KERN, *J.*, agrees with the above.

---

BLACK, *J.*, dissenting: I dissent from the majority opinion wherein it holds that certain undistributed income received in 1934, 1935, 1936, and 1937 by a trust created by petitioner's father and known as Trust No. 3660 was taxable to petitioner in the respective years. I think the income in question was clearly taxable to the trust as a separate legal entity under the provisions of sections 161 and 162, Revenue Act of 1934, printed in the margin.[1]

Trust No. 3660 here involved was no mere tax saving device. It was unquestionably a real trust set up for legitimate purposes and one which, it seems to me, Congress intended to tax according to the provisions of sections 161 and 162. Under section 161 it was the duty of the trust to include in its income tax return all taxable gross income and from this gross income it was entitled to take all the ordinary deductions granted to an individual by the statute. In addition to these deductions the trust was entitled to take the deduc-

---

[1] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

  *      *      *      *      *      *      *

(b) COMPUTATION AND PAYMENT.—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor).  *  *  *

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the the same basis as in the case of an individual, except that—

  *      *      *      *      *      *      *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

  *      *      *      *      *      *      *

[Sections 161 and 162 of the Revenue Act of 1936, applicable to the taxable years 1936 and 1937, are identical with the above.]

tions granted by subparagraph (b) of section 162, printed in the margin.

The trust was directed to pay annually out of the net income of the trust $10,000 to Elizabeth E. Mallinckrodt, wife of petitioner. This was income which was clearly "to be distributed currently" to her within the meaning of (b) of section 162 and under the terms of that subparagraph was deductible by the trust and taxable to the beneficiary, Elizabeth E. Mallinckrodt. Concerning this $10,000 there is no issue in this case.

The remainder of the net income of the trust was not currently distributable to petitioner, Edward Mallinckrodt, Jr., but only such part of the remainder of the net income of the trust, after the $10,000 distribution to Elizabeth, was distributable to him as he might request. The settlor of the trust directed that such part of the net income of the trust as might not be requested by petitioner should be accumulated and should at the end of the year become a part of the principal of the trust estate, subject to such further disposition as was in the trust indenture provided for the principal of the trust estate. Under these provisions only that part of the net income requested by petitioner was currently distributable to him and taxable to him under the provisions of section 162 (b). The balance of the net income not so requested was "income accumulated or held for future distribution under the terms of the will or trust" within the meaning of section 161 (a) (1) and was taxable to the trust. The findings of fact show that "the trustees filed income tax returns with respect to the undistributed taxable income of the trust and paid the tax shown on the returns." In my opinion the law does not require more.

The Board of Tax Appeals, now The Tax Court of the United States, expressly decided this question in *Elizabeth S. Sprague*, 8 B. T. A. 173. In that case, among other things, we said:

The Commissioner held that because the petitioner could receive the income of the trust funds by making a written request therefor, the entire income is taxable to her, and determined the deficiency accordingly. This position can not be sustained. The trust instruments all provided that the income should be added to the principal. To this extent such income was accumulated for unascertained persons or persons with contingent interests. There was the further provision that upon written request (by the settlor in one case and by the petitioner in the others) certain portions of the income were to be paid to the petitioner. Any such request constituted the exercise of a power which, to the extent that such power was validly exercised, removed such income from the provision for accumulation and made it distributable. Such distributable income was thereupon severed from the trust property and was taxable to the beneficiary under the provisions of section 219, quoted above. So much as was not distributable pursuant to the exercise of the power given by the trust instrument, remained a portion of the trust property, taxable to the fiduciary.

The majority opinion concedes that the *Elizabeth S. Sprague* case supports petitioner in the instant case but takes the position that inasmuch as it was decided prior to *Helvering* v. *Clifford*, 309 U. S. 331, and *Corliss* v. *Bowers*, 281 U. S. 376, it is no longer authority. Of course, if the *Sprague* case is in conflict with *Helvering* v. *Clifford*, *supra*, and *Corliss* v. *Bowers*, *supra*, it requires no argument to say that it must give way to those decisions of the Supreme Court. But I do not think there is any conflict.

In the case of *Corliss* v. *Bowers*, *supra*, the settlor of a trust had reserved unto himself the power "to modify or alter in any manner or revoke in whole or in part, this indenture and the trusts then existing, and the estates and interests in property hereby created." After quoting the above language from the trust indenture the Supreme Court said: "It is not necessary to quote more words because there can be no doubt that the petitioner fully reserved the power at any moment to abolish or change the trust at his will." The Supreme Court held that under such a reservation of control over the property, the income from such property was taxable to the settlor under section 219 (g) of the Revenue Act of 1921, a section practically the same as section 166 of the Revenue Acts of 1934 and 1936. In holding that the income in that case was taxable to Corliss, the settlor of the trust, the Supreme Court, among other things, said: "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income whether he sees fit to enjoy it or not."

The majority opinion lays much stress on the language used in the foregoing quotation. I think it has no application to the facts of the instant case. In the *Corliss* v. *Bowers* case, *supra*, the settlor of the trust was the owner of the corpus of the trust at the time he executed the trust indenture and retained such complete power over the disposition of the trust income and corpus throughout the taxable year as to make the income taxable to him under section 219 (g) of the Revenue Act of 1921. Here the petitioner is not the settlor of the trust at all. True, he is made the beneficiary of such part of the net income of the trust as he may request, after the $10,000 is paid to Elizabeth E. Mallinckrodt, but until he requests it the income does not become his property at all. Until such time as he requests it. the income is the property of the trust and the settlor of the trust, Edward Mallinckrodt. Sr., has given direction as to what shall be done with it. He has directed that at the end of each year any part of the net income of the trust which has not been requested by Edward Mallinckrodt, Jr.. shall be accumulated and added to the principal of the trust and disposed of as therein provided for the principal of the trust estate. I submit there is nothing in *Corliss* v. *Bowers* which, under such circumstances, would tax the income *not* requested to petitioner.

The case of *Helvering* v. *Clifford, supra,* was a case where a husband declared himself trustee of securities under agreement, expiring in five years or on death of husband or wife, which provided that net income should be held for wife's benefit and paid to wife in husband's discretion, that husband should have extensive control over corpus, and that on termination of the trust the corpus should go to the husband and accrued or undistributed income and proceeds from investment thereof should go to wife, so that mere temporary reallocation of family income was effected. Under these circumstances the Supreme Court held that the husband to all intents and purposes remained "owner" of the corpus after the trust was created and hence was subject to income tax under section 22 (a) of the applicable statute. It seems to me that it should not require any extended argument to establish the premise that the facts of the instant case are wholly unlike those present in the *Clifford* case and that there is such a wide dissimilarity as to make the *Clifford* case not applicable. I shall not prolong this dissent by comparing the facts of the two cases to show their dissimilarity. The facts in the two cases speak for themselves.

Likewise, I think *H. S. Richardson,* 42 B. T. A. 830; affd., 121 Fed. (2d) 1, and *Jergens* v. *Commissioner,* 136 Fed. (2d) 497, are clearly distinguishable on their facts. For example in the *H. S. Richardson* case the trust instrument, among other things, contained this important provision:

> *Eleventh:* During his lifetime, H. Smith Richardson, husband of the Grantor, may cancel and terminate this agreement by an instrument in writing duly executed and acknowledged and filed with the Trustee or Trustees then acting, and upon such termination and cancellation the said H. Smith Richardson shall be entitled to receive the corpus of the trust fund absolutely and free from all trusts.

Under such a provision we held that H. Smith Richardson was to all intents and purposes made the owner of the trust corpus by the trust indenture and, therefore, the income was taxable to him under section 22 (a). Our decision was affirmed by the Second Circuit. To the same effect is the court's decision in *Jergens* v. *Commissioner, supra.* Likewise to the same effect is our decision in *Ella E. Russell,* 45 B. T. A. 397.

Petitioner was not granted by the trust indenture in the instant case the power to cancel the trust at will and thus terminate it and take over the property for his own use and benefit. Article twelfth provided that the trust might be terminated and the property therein delivered to petitioner, but it had to be done upon the written direction of both trustees. One of these trustees was the St. Louis Union Trust Co. and the other was petitioner. Certainly it will not be assumed that the corporate trustee was the mere alter ego of peti-

tioner and was so completely responsive to his wishes as to make the trust one terminable at will by petitioner, as was the fact in the cases cited above, and thus make petitioner to all intents and purposes the owner of the trust corpus and the net income thereof taxable to him. As I have already stated, this is a case where it seems to me the trust must be recognized for what it is and should be taxed under the provisions of sections 161 and 162 of the applicable revenue acts. I see no occasion for taxing the income to petitioner under section 22 (a) by what I regard as a strained application of the Supreme Court's decision in the *Helvering* v. *Clifford* case. From the majority opinion which seeks to do so, I dissent.

ARUNDELL, LEECH, and HARRON, *JJ.*, agree with this dissent.