Wilfred J. Funk v. Commissioner.
Funk v. Commissioner
Docket No. 111193.
United States Tax Court
1944 Tax Ct. Memo LEXIS 379; 3 T.C.M. (CCH) 100; T.C.M. (RIA) 44030; February 7, 1944
*379 Elden McFarland, Esq., 618 Southern Bldg., Washington, D.C., for the petitioner. Myron S. Winer, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves the redetermination of income tax deficiencies for the calendar years 1938, 1939 and 1940 in the respective amounts of $479.87, $19,528.68 and $27,328.01. The sole issue presented for decision is whether petitioner's gross income for the years in question should be increased by the income of four trusts of which petitioner was grantor. No evidence was offered and no argument was made in connection with a second issue which concerned claimed deductions for legal and accounting expenses. Therefore, we consider such issue abandoned. The tax returns for the periods here involved were filed with the collector of internal revenue for the third district of New York. They were prepared on the basis of cash receipts and disbursements. The case was submitted upon oral and documentary evidence from which we make the following: Findings of Fact Petitioner is an individual residing at 16 Erwin Park Road, Montclair, New Jersey, and having an office in New York City. During all times here *380 pertinent he was engaged in the business of publishing, editing and writing and was an executive of Funk & Wagnalls Company. In the early 1920s petitioner owned several thousand shares of Funk & Wagnalls Company's capital stock. On some date within this period petitioner gave to his wife, Eleanor M. Funk, 10,345 shares of this stock. In April 1929 Mrs. Funk executed a trust indenture by which she declared that such shares were held by her in trust for the benefit of petitioner. Petitioner created an identical trust in favor of Mrs. Funk. The income from these reciprocal trusts, known as Trusts 8 and 7, respectively, has been at all times paid to the beneficiaries and duly reported by them in their tax returns. Such income is not involved in the present controversy. A Delaware corporation named Erwin Park, Inc., hereinafter called Erwin Park, was organized on March 1, 1929, with an authorized capital stock of 20,000 no par shares equally divided between Classes A and B. Voting power was vested exclusively in the holders of Class B stock subject to the General Corporation Law of Delaware. The corporation was given very broad powers. In the certificate of incorporation it was provided *381 that: "With the consent in writing of, or pursuant to a vote of, the holders of a majority of the capital stock issued, outstanding, and having voting power, the Directors shall have authority to dispose, in any manner, of the whole property, including the corporate franchise, goodwill and other intangible property of the Corporation, upon such terms and conditions as they deem expedient and for the best interests of the Corporation." Article VIII of its by-laws provided that no contract or other transaction between Erwin Park and any individual, firm or corporation should be affected or invalidated by reason of the fact that any one of the stockholders, directors, or officers of Erwin Park was interested in such contract or transaction. Petitioner, his wife and John D. Murphy became, respectively, the president, treasurer and secretary of Erwin Park, and also its directors, and have since continued as such. Mrs. Funk has taken no independent part in the operations of the corporation and knows nothing about it. She has signed papers and done things bearing upon the corporation but always under the instruction of her advisors. John D. Murphy is the senior partner of Murphy, Lanier *382 & Quinn, a firm of accountants and tax consultants, employed by petitioner since 1925 and by Erwin Park since its inception. Mr. Murphy and other members of his firm are also the advisors of Mrs. Funk in all business matters. Immediately after its incorporation, petitioner transferred to Erwin Park a substantial part of his property including 17,982 shares of Funk & Wagnalls Company stock and securities and cash in his brokerage accounts with Spencer Trask & Co. and McDonnell & Co. In exchange therefor petitioner became entitled to all the capital stock of Erwin Park. The 10,000 shares of Class A stock were issued to him at once but the Class B voting stock remained unissued until December 23, 1936, when petitioner obtained a certificate for 100 shares. The property received from petitioner was set up on Erwin Park's books at a value of $6,603.439.32. Erwin Park became petitioner's personal holding company. On April 5, 1929, petitioner created six trusts naming himself the trustee of Trusts numbered 1, 2 and 3, and Eleanor M. Funk trustee of Trusts numbered 4, 5 and 6. Each was trustee of a trust for each of their three children. Other than in the respects indicated, the six trusts *383 were identical. They were revocable after three years. The corpus of each trust was 1,666 shares of Erwin Park Class A stock. These trusts never received any income and they are not involved in the present controversy. From 1929 through 1935 Erwin Park received dividends on stock of domestic corporations ranging from a high of $309,124.50 in 1929 to a low of $11,807.50 in 1933. It declared no dividend during this period. It reported a net loss for each year except 1929 when it paid a tax of $9,406.27. During these years petitioner borrowed from Erwin Park a total of $662,000 evidenced by unsecured interest bearing demand notes. Some of the notes were paid; a majority remain outstanding. No interest has been paid on them. The corporation, in 1931, also assumed a debit balance existing in Eleanor M. Funk's brokerage account with McDonnell & Co. in the sum of $474,568.42. To evidence this indebtedness Mrs. Funk signed a demand note in like sum dated October 15, 1931, payable to Erwin Park and bearing interest at five percent. No payment on principal or interest has been made on this note. Eleanor M. Funk did not personally trade in the McDonnell & Co. account. In 1929 and 1930 petitioner *384 transferred to Erwin Park additional securities, the value of which was set up in a W. J. Funk loan account. The loan account was later closed out. At no time did it approximate the amount which petitioner owed Erwin Park. After 1935 petitioner dealt with Erwin Park only on two or three occasions. At the end of 1940 petitioner and Mrs. Funk were indebted to the corporation in an amount exceeding $800,000. Erwin Park's activities, except as noted above, have been confined to the purchase and sale of securities. Pursuant to the resolutions of its board of directors, with Mrs. Funk absent in each instance, it opened brokerage accounts with McDonnell & Co., Spencer Trask & Co., and Scholle Brothers, and a bank account with the Chase National Bank. Petitioner alone was given the authority to act and did act in behalf of Erwin Park. His activities in relation to the purchase and sale of securities were the same after the organization of Erwin Park as before except for the name in which the brokerage accounts were maintained. At special meetings of Erwin Park's directors and stockholders held on December 23, 1936, it was resolved to amend the corporation's certificate of incorporation *385 to authorize its recapitalization. The amendment, filed December 28, 1936, provided that Erwin Park's authorized capital stock be 500 shares of Class A, 1000 shares of Class B and 500 shares of Class C, each share to have a par value of $100; that dividends might be declared and paid at such time, upon such class or classes of stock and in such amounts as the directors in their absolute discretion should determine; and that voting power should vest exclusively in the holders of Class B stock, subject to the General Corporation Law of the State of Delaware. On December 29, 1936, the following acts and transactions took place: petitioner exchanged his 100 shares of old Class B stock for 10 shares of new Class B stock; petitioner, as trustee of Trusts 1, 2 and 3, exchanged the trusts' 4,998 shares of old Class A stock for 499 4/5 shares of new Class A stock; Mrs. Funk, as trustee of Trusts 4, 5 and 6, exchanged the trusts' 4,998 shares of old Class A stock for 499 4/5 shares of new Class C stock; petitioner exchanged the remaining 4 shares of old Class A stock for 1/5th share of new Class A stock and 1/5th share of new Class C stock; petitioner revoked Trusts 4, 5 and 6; a stock certificate *386 for 500 shares of Class C stock was issued to petitioner; petitioner created Trusts A, B, C and D, more particularly described below, naming Mrs. Funk the trustee of each and constituting as the corpus of each 125 shares of Class C stock; and petitioner surrendered his certificate for 500 shares of Class C stock and Erwin Park issued 4 certificates for 125 shares of Class C stock each to Eleanor M. Funk, as trustee of Trusts A, B, C and D, respectively. The following day the directors of Erwin Park declared and paid a dividend of $160 per share on the Class C stock, being a total dividend of $80,000. On March 22, 1937, the remaining 990 shares of Erwin Park Class B stock were issued to petitioner. At special meetings of the Erwin Park directors and stockholders held on December 23, 1937 it was resolved to again amend the corporation's certificate of incorporation. The amendment, filed the following day, continued the directors' discretion as to the time and amount of dividend payments but provided that of all dividends paid during any calendar year 5 percent be paid upon Class A stock, 15 percent upon Class B stock and 80 percent upon Class C stock. In case of liquidation or dissolution *387 the corporate assets were to be divided among the holders of all classes of stock, share and share alike. Dividends totaling $185,000 were declared on December 29, 1937, and were paid by check the following day to the stockholders in the proportions indicated. Trusts A, B, C and D, to which reference has been made above, are identical. They are irrevocable and terminate at petitioner's death. According to their terms, Eleanor M. Funk, as trustee, is to hold, manage, sell, invest and reinvest the corpus, pay the expenses, "and in her discretion to pay all or a part of the netctive income annually to me, or to herself, in accordance with our respe needs, of which she shall be the sole judge, and to accumulate and add to principal the balance of such income, if any. Any income so accumulated and added to principal by the Trustee, shall become a part of the corpus of the trust and may not thereafter be distributed by the Trustee." The trustee has the right to appoint a successor trustee who is to have the same powers; change investments in her discretion; vote the stocks held by her; register them in her own name or as trustee or in the name of a nominee; and become a party to any agreement *388 of reorganization, etc. Petitioner reserved the right to add to the trust corpus. The trusts are to be governed and administered under the laws of New Jersey. Each trust was accepted by Mrs. Funk. She received the stock certificates constituting the corpus of each trust and placed them in her safe deposit box in the Bank of Montclair to which she alone had access. Petitioner signed a letter of even date with the trusts addressed to Mrs. Funk in which the latter was advised as to her duty to exercise her discretion in the division or accumulation of the income of the four trusts free of control of petitioner or any other person. Mrs. Funk signed a letter also dated December 29, 1936, wherein was stated her understanding with respect to her discretionary powers to act in relation to the income as she saw fit. Trusts A, B, C and D contained no provision for the disposition of the principal of the trusts upon their termination. This lack was supplied by supplements to each trust executed by petitioner December 28, 1937. By means of such supplements it was provided that the principal of each trust should be paid to such persons as petitioner might appoint by deed or will. In the event *389 petitioner fails to exercise the powers of appointment, the principal of the Trusts A, B, and C is to be paid, respectively, to Wilfred J. Funk, Jr., Peter Van Keuran Funk and Joan Eleanor Funk, their issues or heirs. The principal of Trust D, in such event, is to be divided equally between these persons, the petitioner's children, or their heirs, per stirpes. Since their creation, the corpus of each trust has consisted solely of 125 shares of Erwin Park's Class C stock and accumulated income from these shares. Dividends upon such shares in each of the four trusts amounted to $3,400 in 1938, $12,000 in 1939 and $12,400 in 1940. In 1936 and each year thereafter Erwin Park declared dividends of virtually all its income for the year; it drew dividend checks during the last week in December upon its account in the Chase National Bank in favor of Eleanor M. Funk, as trustee. The checks drawn in the trustee's favor were deposited to her credit as trustee in the trust accounts in the same bank prior to the end of the year; during the early part of each following January, Murphy, Lanier & Quinn mailed a letter to Mrs. Funk advising her that a certain amount of income to each trust was available *390 for distribution. Mrs. Funk thereupon went to the offices of Murphy, Lanier & Quinn and dictated a letter to that firm disclosing her wish as to the disposition of the income, and distribution checks were accordingly drawn therefor and signed by her. The amount reported by the above named firm in each trust as available for distribution in January 1939, 1940 and 1941, representing the income of the prior year less provisions for taxes, and the disposition made of the money, are as follows.. Available
for dis-
To
To Mrs.
Accumu-
tribution
Petitioner
Funk
lated
1939
$ 3,268.00
$3,200
$ 68.00
1940
11,091.00
$11,000
91.00
1941
11,203.20
9,000
2,000
203.20
Mrs. Funk did not discuss the question of distribution of the trust income with any one. She exercised her own will in the matter but had no standard by which she was guided in coming to a decision. Such decision was not based on the need of herself or petitioner. She took the amount, if any, she wanted, and distributed such of the remainder, if any, to petitioner as she willed and accumulated the balance. Neither petitioner nor Mrs. Funk had a need for the income from the trusts as each had *391 a large income from other sources. Mrs. Funk did not use money which she distributed to herself for household or living expenses or for the education or maintenance of her children. Rather, the money was used to purchase extravagant personal things and in payment of premiums on insurance which she had taken out upon petitioner's life. Mrs. Funk did not know of what the corpus of the four trusts consisted, or what the source of the income received by the four trusts was. She did not know whether the trusts kept books and records and had never seen any books and records of the trusts. Petitioner's purpose in creating Erwin Park and Trusts A, B, C and D was to obtain security for his estate and for Mrs. Funk and to save taxes. As a writer and publisher he was subject to libel and plagiarism suits. He had previously given Mrs. Funk large amounts of cash. After the organization of Erwin Park and the creation of Trusts 7 and 8, petitioner owned individually only 10 shares of Funk & Wagnalls Company stock. Petitioner filed gift tax returns for the years 1937, 1938, 1939 and 1941, in which he reported as gifts to Mrs. Funk the amount of the income of Trusts A, B, C and D which she in those *392 years distributed to herself. The trustee reported such income as taxable to the trusts respectively for the years named and paid an income tax thereon. Respondent determined that the total amount of the dividends paid by Erwin Park to the four trusts in the respective years was taxable to petitioner as income. Accordingly, he added to petitioner's gross income for tax purposes $13,600 for the year 1938, $48,000 for the year 1939, and $49,600 for the year 1940. Such additions to petitioner's income forms the bases of the deficiencies herein. The only explanation for the adjustments contained in the notice of deficiency was, as to 1938, "Income of Wilfred J. Funk Trusts A, B, C and D is held taxable to you"; as to 1939, "Income of Wilfred J. Funk Trusts A, B, C and D taxable to you was found to have been omitted from your return in the sum of $48,000.00"; and as to 1940, "Income of Wilfred J. Funk Trusts A, B, C and D has been found taxable to you in the sum of $49,600.00." Opinion The sole issue for decision is whether the income of Trust A, B, C and D is taxable to petitioner, the grantor of the trusts. Petitioner says not. He contends that their income is taxable to the trustee *393 under the provisions of sections 161, 162 and 163 of the Revenue Act of 1938 and the Internal Revenue Code. Respondent, however, asserts that, based upon the "whole picture" painted by petitioner's acts and transactions in connection with his personal holding company, Erwin Park, and the several trusts created by him, "the income received by Trusts A, B, C and D in the years 1938, 1939 and 1940 is taxable to Wilfred J. Funk under the provisions of section 22(a) and section 45 of the Revenue Act of 1938 and the Internal Revenue Code, and under the following decisions: Helvering v. Clifford, supra, [309 U.S. 331; Smith v. Commissioner, 136 Fed. (2d) 556; Lucas v. Earl, (1930) 281 U.S. 111; Gregory v. Helvering, (1935), 293 U.S. 465; Corliss v. Bowers (1930), 281 U.S. 376; Higgins v. Smith, (1940), 308 U.S. 473; * * *." The above quotation is taken from respondent's brief and it is to be noted that the authorities which he relies upon are stated conjunctively. We experience difficulty in ascertaining *394 the relationship between the cited sections of the statute and some of the cases relied upon. They do not appear to be correlative. Perhaps respondent means to take alternative positions. At any rate, respondent's principal contention is, in substance, that petitioner exercised complete control and domination over Trusts A, B, C and D and that he therefore must be taxed upon the trusts' income. Respondent has adduced a myriad of facts and figures relating to transactions in the years 1929 through 1942 and involving petitioner, his wife, Erwin Park, Trusts 1 through 8, and Trusts A, B, C and D. Some are incorporated in our findings of fact. So far as they cover a period before and after the taxable years in question they are largely immaterial, in our view of the case. True, the evidence proves that petitioner long has been interested and active in minimizing his taxes. Possibly his efforts in this direction have been such as to cause him, in good conscience, to assume far less than his fair share of the tax burden, considering the large amounts of income to which he has had ready access and of which he has made use. But this, in itself, is not enough to warrant our sustaining respondent. *395 A taxpayer may decrease the amount of what otherwise would be his taxes or altogether avoid them by means which the law permits. Gregory v. Helvering, 293 U.S. 465; Sampson Tire & Rubber Corp. v. Rogan, 136 Fed. (2d) 345; Marshall v. Commissioner, 57 Fed. (2d) 633. On the other hand, it might be that petitioner's "taxsaving methods" would not have withstood attack for the year, say, of 1929 or 1937. Speculation on such considerations likewise is not helpful here. We are limited to an inquiry into the propriety of assessing additional income taxes against Wilfred J. Funk for the years 1938, 1939 and 1940 because of his alleged ownership for tax purposes of the corpus and income of four certain trusts. No other question is before us. Consequently, our decision must be based solely upon the substantial or unsubstantial quality for tax purposes of the trusts themselves, which, in turn, must be based upon the circumstances existing in the taxable years in question as they bear upon petitioner's rights in, power over and control of the corpus and income of Trusts A, B, C and D. Edward Mallinckrodt, Jr., 2 T.C. 1128. *396 Before considering these circumstances, however, we give brief attention to respondent's contention that his determination of tax deficiencies should be approved upon authority of section 45 of the Revenue Act of 1938 and the Internal Revenue Code. [1] Section 45 authorizes the Commissioner to apportion income between controlled organizations, trades or businesses if he determines such apportionment necessary to prevent evasion of taxes. But the Commissioner has made no such determination in the present case. The notice of deficiency does not base the adjustments made to petitioner's income upon the exercise of this discretionary power so vested in respondent. Cf. Essex Broadcasters, Inc., 2 T.C. 523; Glenmore Distilleries Co., 47 B.T.A. 213. Reference to section 45 appears for the first time in respondent's brief and even there he fails to point out under what theory he deems it applicable. Clearly, reliance upon section 45 is here a mere makeweight and an afterthought. We are unable, therefore, to give its application serious consideration. *397 This brings us to the matter of the application to the instant facts of section 22(a) of the Revenue Act of 1938 and the Internal Revenue Code as exemplified by Helvering v. Clifford, 309 U.S. 331. Recent reports contain many cases involving the Clifford doctrine. No useful purpose could be served by summarizing even a small number of them. A decision in each such trust case can be made only after a careful balancing of the determinative factors delineating control which are there present. George H. Whiteley, 2 T.C. 618. Trusts A, B, C, and D are long-term trusts, terminating only upon petitioner's death. Consequently, before the income of the trusts can be taxed to petitioner as being in substance his, it must appear that the control which he exercised or could have exercised over the income was "very substantial." Phipps v. Commissioner, 137 Fed. (2d) 141; Commissioner v. Buck, 120 Fed. (2d) 775. An examination of the instant trust indentures and supplements discloses that petitioner, by their9terms, reserved no power of alteration or revocation, *398 could not direct the investment of the corpus, retained no right to substitute other securities for those conveyed to the trustee, and could receive income from the trusts only at the sole discretion of his wife, Eleanor M. Funk, the trustee, but that he could appoint the ultimate takers of the principal. On the other hand, the trustee could sell, invest, and reinvest the corpus of the trusts, register the securities in her name individually or as trustee, vote the stocks, appoint a successor trustee and, at her discretion, pay the income over to herself. Hence, the only factors apparent on the face of the instruments which suggest the retention of ownership in petitioner are the possibilities of receiving income at his wife's discretion, the retention of power to name the ultimate recipients of the principal and accumulations, and the fact that his wife was trustee. Do these factors combine to place the requisite "very substantial" control in petitioner? For the reasons discussed and upon the authorities cited below, we think not. Here Mrs. Funk was not only trustee but she was an income beneficiary under all four trust instruments. Furthermore, petitioner had vested in her, as *399 trustee, the sole power to determine what portion of the income she was to pay to herself as beneficiary. When she made payments to petitioner there remained just that much less for herself. It can not be gainsaid that her interest in the income was adverse to petitioner. Under similar circumstances it was recently said in Phipps v. Commissioner, supra, * * * Nothin in those cases [Helvering v. Clifford, supra,Commissioner v. Buck, supra] suggests that a wife, who has an obviously selfish adverse interest in receiving income for herself, is so lacking in independence that it is to be conclusively presumed that she will exercise her powers as a trustee in accordance with the wishes of her husband. See also Lillian M. Newman, 1 T.C. 921. Moreover, here the uncontroverted evidence is that Mrs. Funk decided upon the distributions without assistance from either petitioner or their common advisors, Murphy, Lanier & Quinn. We are thus unable to hold the marital relationship as constituting an indicia of petitioner's control. Nor is the power of appointment which petitioner *400 retained regarded as a factor in resolving the question. Mary W. Pingree, 45 B.T.A. 32. We also have the circumstance that petitioner received in the taxable years 1939, 1940 and 1941 the greater part of the trust income arising in the respective preceding years. It is our conclusion, however, that this circumstance is significant only if petitioner could require the distribution of some or all of the income from the trusts to himself. He could not compel such result by resort to legal action. As we have pointed outabove, it can not here be said that petitioner could cause this result by reason of the trustee's subservience to him. He, as grantor of the trusts, had given to the trustee the power "in her discretion to pay all or a part of the net income annually to me, or to herself, in accordance with our respective needs, of which she shall be the sole judge." By these terms it was wholly discretionary whether the trustee should make any payment to petitioner as grantor-beneficiary and, hence the latter could not compel a payment. Scott on Trusts, [*] 156.2. The trusts were to be governed by the laws of New Jersey. In New Jersey the *401 courts will not substitute their judgment for that of a trustee where discretion is given the trustee, even at the behest of a beneficiary not the grantor, except upon proof that the exercise of the discretion has been in bad faith. Reed v. Patterson, (Ct. Errors & App., N.J.) 14 Atl. 490; Tansey v. New Brunswick Trust Co., (Ct. Ch. N.J.) 3 Atl. (2d) 575; McFerran v. Paterson Nat. Bank, (Ct. Ch. N.J.) 6 Atl. (2d) 403. In view of the New Jersey law, it is inconceivable that this petitioner, having voluntarily placed such obviously broad discretionary powers in another and having no real need for the trust income during the taxable years, could successfully complain had the trustee elected to pay him no income. Thus, respondent's contention is not supported by the fact that petitioner could and did properly receive trust income, since the distribution thereof was a matter beyond his control. Based upon the very terms of Trusts A, B, C and D and their supplements, we think it clear that petitioner retained no such "very substantial" powers as to bring this case within the ambit of the Clifford *402 doctrine. Rather, the facts spelled out by the trusts are comparable to those inducing a decision in taxpayer's favor in Commissioner v. Betts, 123 Fed. (2d) 534; Commissioner v. Branch, 114 Fed. (2d) 985; Robert S. Bradley, 1 T.C. 566; Lillian M. Newman, supra; and John Stuart, 2 T.C. 1103. However, respondent asserts that petitioner did in fact command the disposition of the income and corpus of the four trusts through his dominion of Erwin Park and that section 22(a) is applicable to tax the income to petitioner, notwithstanding the terms of the trusts. If respondent's premise is correct, there is merit to his contention for, in considering whether the grantor of the trusts should be treated as the owner of the corpus, we are admonished not only to look to the terms of the trust, but also to "all the circumstances attendant on its creation and operation." Helvering v. Clifford, supra. In support of his premise respondent points out that the corpus of the four trusts was Class C non-voting *403 stock of Erwin Park, that their sole income came from dividends on this stock and that Erwin Park was controlled by petitioner, the owner of all the voting stock. It follows, says respondent, that petitioner could freely divert dividends from the Class C stock, siphon off Erwin Park's earnings by withdrawals, leaving nothing for distribution and deal in Erwin Park's assets in any respect he desired even to completely disposing of them, thus rendering the trust corpus virtually worthless. The trouble with respondent's premise is that these things do not necessarily follow. Although petitioner and his tax consultant, John D. Murphy, were Erwin Park's only active directors and constituted a majority of its board, and although petitioner could always control the personnel of the directorate because of his ownership of all Erwin Park's voting stock, still the directors were bound to act according to law and as restricted by the corporation's certificate of incorporation. Therefore, as we shall demonstrate below, petitioner could not do or cause to be done over the objection of the trustee the things that respondent argues he could do, and the trustee, as has been seen, had adverse interests *404 in the income of the trusts and, in any event, was legally charged with the duty to properly protect the trust estates. On December 23, 1937, Erwin Park's certificate of incorporation was amended to provide that 80 percent of all dividends declared must be paid to the holders of Class C stock. Clearly, Class C stock thereby was awarded a special right or preference in relation to the two other classes of stock. Erwin Park is a Delaware corporation. Section 26 of the Delaware General Corporation Law provides, in part, as follows: * * * And upon so filing and recording the same, the Certificate of Incorporation of said corporation shall be deemed to be amended accordingly; provided, however, that if any such proposed amendment would alter or change the preferences, special rights or powers given to any one or more classes of stock, by the Certificate of Incorporation, so as to affect such class or classes of stock adversely, or would increase or decrease the amount of the authorized stock of such class or classes of stock, or would increase or decrease the par value thereof, then the holders of the stock of each class of stock so affected by the amendment shall be entitled to vote *405 as a class upon such amendment, whether by the terms of the Certificate of Incorporation such class be entitled to vote or not; and the affirmative vote of a majority in interest of each such class of stock so affected by the amendment shall be necessary to the adoption thereof, in addition to the affirmative vote of a majority of all other stock entitled to vote thereon; * * * Because of this statute, Erwin Park's certificate of incorporation could not be amended in such a way as to affect the special right vested in the Class C stock without the affirmance of Mrs. Funk, the holder as trustee of all such stock, regardless of the fact that the stock normally could not be voted. See Hartford Accident & Indemnity Co. v. W. S. Dickey Clay Mfg. Co., (Ct. Ch. Del.) 21 Atl. (2d) 178. Hence, during the years here involved, in the absence of her formal approval, petitioner could not have diverted Erwin Park's income to himself through a change in the proportions in which dividends were paid on the three classes of stock. Finally, petitioner, as majority stockholder, sole voting stockholder, and director, could not dispose of or deal in the corporation's ASSETS *406 IN FRAUD OF Mrs. Funk's rights as a trustee-beneficiary minority stockholder, despite the broad provisions of the certificate of incorporation and by-laws. Directors and controlling stockholders are fiduciaries and they may not act to the great detriment of the company and the interests of the minority. Pepper v. Litton, 308 U.S. 295; Lebold v. Inland Steel Co., 125 Fed. (2d) 369, cert. denied, 316 U.S. 675. It is also to be noted that the provision in Erwin Park's certificate of incorporation giving to the directors the authority to dispose of the corporation's whole property with the consent of the majority of those holding the voting stock is but a repetition of section 65 of the General Corporation Law of Delaware. Accordingly, it vested in Erwin Park's directors and voting stockholders no greater powers than vested in similarly situated persons in respect of all corporations incorporated under this Delaware Act. This provision of the statute, and hence of Erwin Park's certificate of incorporation, has been construed by the Delaware Courts as giving the directors a discretion which must *407 be exercised with a thought to expediency and the best interests of the corporation. The minority stockholders can appeal to equity if there has been a fraud upon them by the sale. Allied Chemical & Dye Corporation v. Steel & Tube Co. of America, (Ct. Ch. Del.) 120 Atl. 486. For these reasons we are unable to find that petitioner had command of the corpus of Trusts A, B, C and D through a complete domination of Erwin Park. We hold that section 22(a) is likewise inapplicable to tax the income of the trusts to petitioner under this theory. We have disposed of respondent's principal contention. However, there remains the question of the force of Lucas v. Earl, Gregory v. Helvering, Corliss v. Bowers, supra, and Smith v. Commissioner, 136 Fed. (2d) 556 and Higgins v. Smith, 308 U.S. 473, upon the present case. We shall not restate the facts giving rise to each of these well known decisions. Suffice it to say that none involve a trust and that each is distinguishable in many particulars from the case at bar. Yet the opinions in all contain language that respondent deems helpful upon the *408 general proposition that in questions of taxation the courts look at actualities and are not diverted by mere shams and devices lacking purpose aside from tax evasion. Respondent urges that Erwin Park may be disregarded for tax purposes under such rule. We fail to see how respondent's case would be aided were we to do so. Respondent seeks to tax the income of Trusts A, B, C and D to petitioner, not the income of Erwin Park. May the trusts be disregarded? The trusts are instruments by which petitioner conveyed title to property for the term of his life and through which petitioner reserved no substantial powers of alteration and control. The trustee has exclusive possession of the stock certificates, they were issued in her name as trustee and she alone can draw on the four trust bank accounts. In all outward aspects the trusts are real, solid, subsisting arrangements such as have long been recognized by the revenue laws and concerning the taxation of which specific provisions are therein included. It is true as shown by the evidence that Mrs. Funk was wholly unfamiliar with "business," that she did not know the composition of the corpus of the trusts or the source of their income, *409 that she did not know the amount of such income until advised by letter from Murphy, Lanier & Quinn in January following the year of its receipt, that she had never kept or seen a book or record of the trust accounts, that she did not personally administer or direct the administration of the trust estates and did nothing in connection therewith except to dispose of the trust income but left such administration and the keeping of records thereof to the firm of Murphy, Lanier & Quinn, who were petitioner's and Erwin Park's accountants and tax consultants. It is also true that such distribution of the income as was made was not made currently but in the year following the year of its receipt, that the trust income was reported and paid as taxable to the trusts as not currently distributable and that by the creation of four identical trusts instead of one, such income fell into lowered trust income surtax brackets. But whether viewing the whole picture a feeling may lurk that the creation and administration of the trusts brought no substantial economic deprivation to petitioner we can not in view of the evidence find such to be the fact or disregard the trusts as being without substance. *410 To do so we must find that petitioner controlled in large measure the exercise of the powers granted by the trust instruments and thereby retained substantial control over the trust property and the disposition of the trust income. Such finding would have no affirmative evidence to support it but would be in the face of testimony directly to the contrary. We therefore hold that the income in question is not taxable to petitioner under section 22(a), and that respondent erred in adding the respective amounts thereof to petitioner's income for tax purposes for the taxable years 1938, 1939 and 1940. In so holding we expressly refrain from deciding whether the trust income in question was taxable to the trusts as contended by petitioner since that issue is not before us. Decision will be entered under Rule 50. Footnotes
1. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades or businesses.↩