EDWARD E. BISHOP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LILLIAN H. BISHOP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 692, 3124, 693, 3123. Promulgated February 28, 1945.

*Edmond L. Jones, Esq.,* and *James C. Rogers, Esq.,* for the petitioners.

*P. A. Bayer, Esq.,* for the respondent.

OPINION.

HILL, *Judge*: The respondent contends that the undistributed income of these trusts was taxable to the petitioner-life beneficiaries under section 22 (a) of the Revenue Act of 1938 and the Internal Revenue Code, and also under sections 166 and 167, as reciprocal trusts.

Each of the petitioners, independently wealthy so that the approximately $250,000 in securities conveyed in trust by each was but a small part of his or her estate, was made the first life beneficiary of the trust created by the other. Each petitioner was likewise given a general testamentary power of appointment over the corpus. The corporate trustee was given "complete and full discretion to determine what part, if any, of the net income" it would pay to the life beneficiary and "when it, in its uncontrolled discretion, will pay such portions" of the net income to the beneficiary. No criteria whatsoever were set forth in the trust instruments on which the trustee was to act. Lillian H. Bishop testified that the reason her spouse was given a life estate was because she did not want Crawford to get control of the funds should Mrs. Crawford predecease him. She testified that there was an understanding with the trustee that when Bishop requested the net income to be paid to him the trustee would so pay it, for the use of the Crawfords. Edward E. Bishop, on the other hand, was more frank, we think, in testifying at one point that one of his motives in creating the trust "was to, by the remotest stretch of the imagination that Mrs. Bishop would ever need anything, maybe that would be there." On cross-examination he testified that many of his friends had lost money through bad investments and admitted that one of his considerations in setting up the trust was that he "felt that as a very faint possibility that Mrs. Bishop signing away, or something, her own, that she would have the use of that little * * *." From this testimony we find that there was an agreement with the trustee that it would pay the net income of the trust to the life beneficiary on the request of that beneficiary and that this was not merely to be paid for the benefit of the Crawfords, but for the benefit of the life beneficiary himself. Furthermore, this view is buttressed by the fact that each life beneficiary was given the right at any time to

change the trustee to any other corporate trustee. Thus, the corporate trustee was placed under the control of the life beneficiary and since there were no criteria set forth in the trust instrument as to when and what part, if any, of the trust income it should pay to the life beneficiary there could be no breach of trust in its acceding to the wishes of the life beneficiary. Nor would the trustee have anything to go on in making its decision as to whether it should distribute or accumulate the income, other than such a request by the life beneficiary.

We can view the confluence of provisions (1), that the trustee shall have complete discretion as to when and whether it shall pay the net income to the life beneficiary with no criteria or tests laid down on which it shall pass its judgment, and (2), that the life beneficiary may remove the trustee at will and appoint a new corporate trustee as often as he desires, in no other light than as being a means of bringing about the result that would be reached had the trust instrument provided that net income shall be payable by the trustee to the life beneficiary on the request of the latter. These provisions may be used to enforce what we have found to be the understanding outside of the trust instrument between the trustee and the petitioners and would serve in the place of such an understanding with a new trustee should the beneficiary ever see fit to change trustees. Since these provisions are more than they appear to be, we consider actualities only, regarding the substance rather than the form. *United States* v. *Phellis*, 257 U. S. 156, 168.

In *Richardson* v. *Commissioner*, 121 Fed. (2d) 1, it was held that a trustee who had the power to revoke and take for himself the corpus of a long term trust created by his wife for the benefit of their children was personally taxable on the income thereof under section 22 (a), although he did not exercise his power to terminate the trust and never used any of the income for his own benefit. To like effect was *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784, where the taxpayer was not the grantor but the trustee and had the power to alter or amend the trust instrument and to withdraw the trust corpus. The court there said:

In Section 22 (a) of the respective Revenue Acts here applicable, Congress intended to use the full measure of its taxing power. * * * It is the long-settled course of tax jurisprudence that such control over income warrants the imposition of the tax incidence of that income upon the person who commends its disposition whether he takes it for himself or not.[2] This principle is not to be limited in trust cases to situations where the grantor has retained controlling powers; the determinative consideration is the existence of actual dominion over the property whether it is retained or acquired. * * *

---

[2] *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Corliss* v. *Bowers*, 281 U. S. 376; *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Clifford*, 309 U. S. 331; *Helvering* v. *Horst*, 311 U. S. 112; *Harrison* v. *Schaffner*, 312 U. S. 579.

In *Edward Mallinckrodt, Jr.*, 2 T. C. 1128; affd., 146 Fed. (2d) 1, the taxpayer was cotrustee with a trust company of a trust created by his father. The remainder of the net income after payment of $10,000 per year to taxpayer's wife was payable to taxpayer upon his request. All net income not so paid was to accumulate and become part of the principal. Taxpayer was given a general testamentary power of appointment over the remainder, which was to go to his wife, children, or other descendants should he fail to exercise the power. Subject to the approval of both trustees upon the request of taxpayer, the trustees might pay taxpayer during his lifetime such portion of the principal as might seem wise to the trustees to distribute to taxpayer for his benefit or that of his family. Taxpayer was given power to appoint a successor trustee. The trustees had power to terminate the trust during the lifetime of the taxpayer for any reason which would be to the interest of the estate or the beneficiaries and thereupon to transfer the assets to taxpayer. The trustees had broad powers of management. Taxpayer never exercised his right to take trust income. In holding that the income was taxable to the taxpayer, we said:

* * * The fact that the powers and rights are not the retained powers and rights of a grantor but were received by petitioner as beneficiary of the trust and by grant from his father makes them no less substantial. As in the *Clifford* case [309 U. S. 331] the rights and powers of the petitioner in and to the trust corpus and the income therefrom did not include all of the incidents of ownership, but we think it may definitely be said that the benefits held by and belonging to petitioner, directly or indirectly, were such as to require the conclusion that he was the owner of the income here in question, within the meaning of section 22 (a) *supra.* * * *

In affirming the opinion of the Tax Court, the Circuit Court of Appeals for the Eighth Circuit said:

We agree with the majority of the Tax Court that implications which fairly may be drawn from the opinions of the Supreme Court in *Corliss* v. *Bowers*, 281 U. S. 376, 378, *Helvering* v. *Clifford*, 309 U. S. 331, and other cases relative to the taxability of trust income to one having command over it, justify, if they do not compel, the conclusion that the undistributed net income of the trust in suit, during the years in question, was taxable to petitioner under § 22 (a). This, because the power of petitioner to receive this trust income each year, upon request, can be regarded as the equivalent of ownership of the income for purposes of taxation. In *Harrison* v. *Schaffner*, 312 U. S. 579, 580, the Supreme Court approved "the principle that the power to dispose of income is the equivalent of ownership of it and that the exercise of the power to procure its payment to another, whether to pay a debt or to make a gift, is within the reach of the statute taxing income 'derived from any source whatever'." It seems to us, as it did to the majority of the Tax Court, that it is the possession of power over the disposition of trust income which is of significance in determining whether, under § 22 (a), the income is taxable to the possessor of such power, and that logically it makes no difference whether the possessor is a grantor who retained the power or a beneficiary who acquired it from another. See *Jergens* v. *Commissioner, supra,* (p. 498 of 136 Fed. (2d)). Since the trust income in suit was

available to petitioner upon request in each of the years involved, he had in each of those years the "realizable" economic gain necessary to make the income taxable to him. See *Helvering* v. *Stuart*, 317 U. S. 154, 168–169; *Helvering* v. *Clifford, supra,* (pages 336–337 of 309 U. S.) ; *Helvering* v. *Gordon,* 8 Cir., 87 Fed. (2d) 663, 667.

The Circuit Court evidently did not rely on the taxpayer's right to revoke the trust, but rather observed that the grantor intended the taxpayer's wife and descendants to have a real interest in the income and corpus of the trust estate. The court said:

* * * It is a fair assumption that the grantor contemplated that petitioner would not, during his lifetime seek to withdraw either income or principal from the trust estate unless he needed it or unless he believed that it could be used advantageously by him for the benefit of the family.

In the establishment of these trusts petitioners have received from each other all the incidents of ownership that were of importance to them. Under the trust created by Edward E. Bishop, petitioner Lillian H. Bishop has the right to the net income for life should she choose to request it. She may change the trustee to any corporate trustee at will and make as many successive changes as she desires. She must be consulted on any changes in investments and, in view of her power to change the trustee, this becomes more than a mere consultative right. If in the event of "illness or other extraordinary circumstances" she should have need of more funds than are provided by the current income then the trustee may, in its discretion, pay to her up to 5 percent a year of the corpus of the trust and any part of the income not already distributed. She also has a general testamentary power of appointment over the corpus of the trust.

Under the trust created by Lillian H. Bishop, petitioner Edward E. Bishop has the same powers and rights. We have here a situation where a devoted husband and wife, each independently wealthy, have reallocated their income between themselves in such a way as (1) to retain all the incidents of ownership that were of importance to them and, (2) at the same time if successful, to remove the income on $500,000 of their fortunes from the high tax brackets into which it would otherwise fall. All the provisions in remainder for the Crawfords are subject to revocation by each of the petitioner-life beneficiaries and each can convey by will approximately the same amount and type of securities that he could have so conveyed before executing his trust.

Each petitioner-life beneficiary has the power to have the income distributed or accumulated. During the years here involved the income was being accumulated subject to the demand of the life beneficiaries, and if not demanded during their lifetime they have the power by will to dispose of both the income and corpus. All that each petitioner lacks as to complete ownership of the fund created for him

is the power to dispose of the principal during his life. But since the principal is but such a small part of the wealth of each of the petitioners and since they felt that they would only want the principal during life in an extraordinary circumstance, the giving up of that incident of ownership may not be said to preclude them from being the owners of the income under section 22 (a).

We have found it unnecessary to consider the second argument of the respondent that each of these trusts was created by the petitioner-life beneficiary thereof under the doctrine of reciprocal trusts and that the income thereof was taxable to him under sections 166 and 167, *supra*.

Since our opinion does not rest upon the proposition that the transfers in trust were not gifts, the question as to whether we have jurisdiction over the gift taxes paid for the year 1935 is not before us, but in any event that question has been answered in the negative. *Commissioner* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418; *Robert G. Elbert*, 2 T. C. 892.

The sums of $229, $229, and $297 expended by petitioner Edward E. Bishop during the years 1938, 1939, and 1940, respectively, for statistical services used by him in the management and conservation of his investments are deductible as nonbusiness expenses under section 23 (a) (2) of the Internal Revenue Code.[1] Petitioner conceded that the $70 spent in each of those years for accountant's fees in the making of his income tax returns is not deductible.

*Decisions will be entered under Rule 50.*

---

[1] Section 23 (a) (2) was added by section 121 of the Revenue Act of 1942 and was made retroactive by section 121 (d) and (e) of that act. It reads as follows:

"SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

"(a) Expenses.—

\* \* \* \* \* \* \*

"(2) Non-trade or non-business expenses.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."