Ralph Edward Grimme v. Commissioner.
Grimme v. Commissioner
Docket No. 4621.
United States Tax Court
1945 Tax Ct. Memo LEXIS 77; 4 T.C.M. (CCH) 933; T.C.M. (RIA) 45313; September 28, 1945
Henry A. Kalcheim, Esq., 180 West Washington St., Chicago. Ill., Thomas L. Tallentire, Esq., and Edward R. Dorr, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax of $1,089.36 and $3,223.59 for the calendar years 1940 and 1941, respectively. The *78 issues are: (a) whether respondent in determining the deficiencies erred in his inclusion in gross income of the petitioner for those years income received by three trusts created by petitioner on February 1, 1937, and a trust created by his wife, Agnes Grimme, on August 1, 1940, for the benefit of their minor children; (b) did respondent err by including in the income of petitioner, as salary, certain sums designated as "Allocation A Distribution" and paid by Cincinnati Stamping Co., an alleged partnership; and (c) did respondent err in disallowing certain contributions to individuals in the amount of $106.17 under section 23 (o) of the Internal Revenue Code. Findings of Fact Petitioner is an individual residing at 720 East 10th Street, Newport, Kentucky. His returns for the taxable years involved were filed with the collector of internal revenue for the district of Kentucky at Louisville, Kentucky. On February 1, 1937, petitioner executed three separate trust agreements, naming his wife, Agnes Grimme, as trustee. Under each trust one of his 3 minor children was named as beneficiary. The corpus of each trust was 94 shares of the common stock of The Cincinnati *79 Stamping Company, a corporation, actively engaged in the metal fabricating business and with which petitioner had for some years been connected. Each trust agreement contained identical provisions. The trust instrument naming petitioner's son, Paul A. Grimme, as beneficiary, reads as follows: "TRUST AGREEMENT "THIS AGREEMENT made and entered into as of the 1st day of February, 1937, between Ralph E. Grimme of the City of Cincinnati and State of Ohio, hereinafter called the Settlor, and Agnes Grimme, hereinafter called the Trustee. "WITNESSETH: That the Settlor in consideration of the sum of One Dollar ($1.00) to him paid by said Trustee, receipt whereof is hereby acknowledged, and in further consideration of the agreement on the part of said Trustee to accept and perform the trusts hereinafter created, does hereby assign, transfer and deliver unto said Trustee, the following described securities and personal property: 94 shares Common Capital Stock of The Cincinnati Stamping Company "TO HAVE AND TO HOLD the same to the said Trustee and her successor as hereinafter provided, in trust nevertheless, for the following uses and purposes and with the following powers, to-wit: *80 "1. All the income of the above described property or of any property placed in its stead, either by the sale or exchange of said securities or any other investment made of the proceeds arising out of the sale or exchange, or any other disposition of said securities, shall be paid to Paul A. Grimme, throughout his natural life, until he shall attain the age of twenty-one (21) years, upon which date this trust shall terminate and the corpus thereof shall be transferred and/or conveyed unto Paul A. Grimme, or the heirs of his body, absolutely and in fee simple. "2. Should the said Paul A. Grimme die before he shall have attained the age of twenty-one (21) years, this trust shall continue and the income thereof shall be paid to Ralph W. Grimme and Carol Marie Grimme, or to the heirs of their bodies, until they shall attain the age of twenty-one (21) years, upon which date this trust shall terminate and the corpus thereof shall be transferred and conveyed to said Ralph W. Grimme and Carol Marie Grimme or the heirs of their bodies, share and share alike, absolutely and in fee simple. "3. Said Trustee shall hold, manage and control such property during the life of this trust with power *81 to sell, transfer, assign and deliver the same with full power to invest and reinvest the principal thereof, with like power over all investments, which investments or reinvestments may be made by said Trustee in her sole discretion without limitation to such investments as may be by law designated as proper investments for Trustees. "4. Said Trustee shall have full power in converting personalty into realty and realty into personalty; to vote debentures; to consent to consolidations and reorganizations; to exercise subscription rights and all other rights arising out of the ownership of said securities; and to execute and deliver all proxies, powers of attorney and agreements which she may deem necessary and advisable in the administration of this trust. "5. Receipts signed by said Trustee for any monies or other property delivered to her shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property, and no person, corporation or transfer agent dealing with said Trustee as to matters purporting to affect the trust estate shall be required or concerned to inquire as to such transactions nor as to the disposition *82 of the proceeds thereof. "6. Should said Trustee die prior to the termination of this trust, Arthur J. Grimme shall serve as such Trustee for the remainder of the terms of this trust. "7. Any distribution of principal provided for herein may be made either in cash or in securities or in both in the sole discretion of the Trustee, and such distribution is to be made at such values as said Trustee may determine. "8. The Trustee shall not be required to set aside any sinking fund to absorb losses incurred upon sales or premiums paid upon purchases or for any other purposes, The Trustee shall have full power to determine what shall be considered corpus and what income of this trust. "9. The Trustee shall not be held accountable for any errors of judgment but shall be liable only for gross negligence or wilful default in the administration of this trust. "10. This trust is hereby declared to be irrevocable and the Settlor hereby full and completely releases, transfers and assigns the property herein described to the Trustee herein named and her successor, without any right, power or authority in any way to cancel, revoke, or alter the transfer, conveyance or assignment herein *83 referred to or any of the terms of this trust agreement. "IN WITNESS WHEREOF, hereto and to a duplicate hereof, said Ralph E. Grimme of the City of Cincinnati and State of Ohio, has set his hand and to show her acceptance of said trust, her agreement to perform the same and her receipt of the aforesaid property, the said Agnes Grimme, as Trustee, have caused their names to be signed hereto and to a duplicate hereof the day and year hereinbefore written. "(SIGNED) RALPH E. GRIMME Settlor." None of the income for the years here involved was distributed to the beneficiaries but was used to the extent necessary to meet the payment of income taxes due from each trust. Upon attaining his majority, Ralph W. Grimme, beneficiary of one of said trusts, received the corpus and undistributed income in accordance with the provisions of said trust. On August 1, 1940, Agnes Grimme, wife of the petitioner, set over the sum of $100 into a trust, naming the petitioner, Ralph E. Grimme, as trustee and designating 4 children of the petitioner, Ralph W. Grimme, Paul A. Grimme, Carol M. Grimme and Darlene C. Grimme, as beneficiaries. The trust instrument provides as follows: "TRUST AGREEMENT" *84 "THIS AGREEMENT made and entered into on the 1st day of August, 1940 between Agnes Grimme of the State of Ohio, hereinafter called the Settlor, and Ralph E. Grimme, hereinafter called the Trustee, "WITNESSETH: That the Settlor, in consideration of the sum of One Dollar ($1.00) to him paid by the said Trustee, receipt of which is hereby acknowledged, and in further consideration of the agreement on the part of said Trustee to accept and perform the trusts hereinafter created, does hereby deliver, transfer and pay over unto said Trustee the sum of One Hundred Dollars ($100.00). "TO HAVE AND TO HOLD the same to the said Trustee and his successors, in trust nevertheless, for the following uses and purposes and with the following powers, to-wit: "1. All and any of the income derived from the investment of said sum after the payment of all expense of this Trust is to be paid to Ralph W. Grimme, Paul A. Grimme, Carol M. Grimme and Darlene C. Grimme, or the heirs of their bodies, per stirpes, in equal shares throughout the life of this Trust. "From the date of the execution of this Agreement until the termination thereof, the income hereof may and shall be expended for the education *85 of said Ralph W. Grimme, Paul A. Grimme, Carol M. Grimme and Darlene C. Grimme, as and when necessary for the same, at the discretion of the Trustee. Should any of said named persons die, prior to the termination hereof, without issue of the body surviving, the share of such deceased person shall be equally distributed to the survivors, share and share alike, or to the heirs of the body of any deceased party, per stirpes. "2. This Trust shall continue and remain in full force and effect until the 31st day of July, 1959, at which time and upon which date it shall cease and terminate, and, thereup, the Trustee shall transfer, assign, convey, deliver and/or pay over unto Ralph W. Grimme, Paul A. Grimme, Carol M. Grimme and Darlene C. Grimme, in equal shares, or to the heirs of the body of any of said parties who may be deceased, per stirpes, all of the corpus of this Trust then remaining in said Trustee's hands. Should any of said named persons die, prior to the termination hereof, without issue of the body surviving the share of such deceased person shall be equally distributed to the survivors, share and share alike, or to the heirs of the body of any deceased party, per stirpes. *86 "3. The Trustee shall hold, manage and control such sum, or any and all investments or interests purchased with the same, and shall have full power as such Trustee, to enter into associations, partnerships, firms and other business ventures, to purchase corporate stock or other securities, to purchase and hold real estate, and with like power over all investments and re-investments which may be made by said Trustee, in his sole discretion, without limitation to such investments as may be by law designated as proper investments for Trustees. "4. The said Trustee shall have full power to convert real estate into personalty and personalty into realty and to exercise all rights arising out of the ownership of said real estate or personalty and to do all things which he may deem necessary and advisable in the administration of this Trust. "5. Receipts signed by the Trustee for any monies or other property delivered to him shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property and no person, firm or corporation dealing with said Trustee as to matters purporting to affect the trust estate shall be concerned *87 or required to inquire as to such transaction nor as to the disposition of the proceeds thereof. "6. The Trustee shall not be required to set aside any sinking fund to absorb losses incurred or for any other purpose, and he shall have full power to determine what shall be considered corpus and what income of this trust. "7. The Trustee shall not be held accountable for any errors of judgment but shall be liable only for gross negligence or wilful default in the administration of this trust. "8. The Trustee, or his successors in trust, shall be compensated for his services as such Trustee, from the income of this Trust, in the sum of Five Thousand ($5,000.00) Dollars per year and such compensation shall be a first charge upon such income. "9. Should the Trustee named herein die prior to the termination of this Trust, the Settlor, Agnes Grimme, shall serve in the capacity of Trustee until this Trust is terminated. Should the Settlor predecease the termination of this Trust, the Trustee shall have the right to name a Trustee to succeed him as Trustee, by Will. Should the Settlor serve as Trustee under this provision, she shall have the right to name a Trustee to succeed her, by *88 Will. "10. This Trust is hereby declared to be irrevocable and the Settlor hereby full and completely releases and delivers the property herein described to the Trustee herein named without any right, power or authority in any way to cancel, revoke or alter the transfer herein referred to, or any of the terms of this trust agreement. "IN WITNESS WHEREOF, hereto and to a duplicate hereof, said Agnes Grimme of the City of Cincinnati and State of Ohio, has set her hand and, to show his acceptance of said trust, his agreement to perform the same and the delivery of the said sum to him, the said Ralph E. Grimme, as Trustee, have caused their names to be signed hereto and to a duplicate hereof, the day and year hereinafter written. "(SIGNED) AGNES GRIMME Settlor "(SIGNED) RALPH E. GRIMME Trustee "In the presence of: "(SIGNED) PAUL T. SCHMITZ "(SIGNED) HARRY W. EVESLAGE" Petitioner has performed the duties as trustee of the trust created August 1, 1940 by Agnes Grimme. For such services as trustee he was paid a salary of $2,083.34 for the year 1940 and $5,000 for the year 1941, in accordance with the terms of the trust. The income from the Agnes Grimme trust for the year *89 1940 was $12,769.23 and for 1941 was $18,199.63. From such income, distributions to the beneficiaries were made as follows: Carol M. Grimme
$570.00
Darlene C. Grimme
350.00
Paul A. Grimme
750.51
Ralph W. Grimme
750.51
The distributions to petitioner's children were used for educational purposes. None was used for their support. The principal source of petitioner's income for the taxable years was the salary he received as trustee of the August 1, 1940 trust and his earnings as secretary and treasurer of The Cincinnati Stamping Company, a corporation. Upon the execution of the trust agreement of August 1, 1940, petitioner, as trustee, entered into a so-called "partnership agreement" with William P. Eger, acting as a trustee of a similar trust, John G. Schroer, manager of a trust created for the benefit of himself and wife, Albert Hoersting and Eleanor Sherman, as trustees for the "Hoersting Family Trust" and George A. Wimmer, an individual. The contribution of each of the trusts and the individual to the so-called "partnership" was the sum of $100. This so-called "partnership" was organized to take over the assets and business of The Cincinnati Stamping *90 Company, a corporation, substantially all the stock of which was owned by these individuals or by the trusts created by them. Upon its organization the so-called "partnership" acquired the business of The Cincinnati Stamping Company, including its inventory and accounts receivable. Certain of its equipment was taken under lease at a yearly rental for a term of years with an option to purchase. The consideration agreed to be paid for the assets and business acquired was $6,995.44, together with $80,000 of its 4% debenture bonds. The trust indenture securing these bonds provided specifically that the interest was payable only from earnings and that the so-called "partners" should not be personally liable for the obligation but the bonds were enforceable only against partnership property. Petitioner, George A. Wimmer, William P. Eger, John G. Schroer and Albert Hoersting had been officers and/or employees of The Cincinnati Stamping Company and the active operators of the business prior to its acquisition by the so-called "partnership" which took the name Cincinnati Stamping Company, merely eliminating the word "The". Upon the acquisition of the business by the so-called "partnership" *91 it was continued without interruption and under the management and direction of the same individuals as before. Four of the 5 named individuals contributed their services actively and continuously to the business of the so-called "partnership" The fifth, albert Hoersting, lived at Dayton, Ohio, and was able to give little of his time to the affairs of the business. The partnership agreement provided that the 4 active partners should receive a larger distribution of profits than those distributable to the Hoersting Family Trust. This extra distribution was designated "Allocation A Distribution" and was computed as a percentage of sales made to certain designated firms. After making this distribution the balance of the income of the business was divided equally among the 5 "partners". In determining the deficiencies here in question, the respondent increased petitioner's income for the year 1940 in the amount of $4,222.28, which represented Allocation A Distributions made by Cincinnati Stamping Company to petitioner for the year 1940, and for the year 1941, increased his income in the amount of $6,600.77, a similar distribution. These distributions were determined by respondent to be *92 salary received by petitioner from the so-called "partnership". Respondent, also, in determining the deficiencies, included in petitioner's income the balance of the income distributed by the so-called "partnership" to petitioner as trustee of the trust created August 1, 1940 by Agnes Grimme, and the income received by the 3 trusts created by petitioner on February 1, 1937. Opinion Petitioner questions respondent's action in taxing to him the entire income of 3 trusts created by him on February 1, 1937, and also with the income of a trust created on August 1, 1940 by Agnes Grimme, wife of petitioner. In all the trusts the beneficiaries named were minor children of the settlors. The trusts created by petitioner and that created by his wife vary in their provisions and were executed under different circumstances and we therefore discuss them separately. The 3 trusts created by petitioner were identical in form. The corpus of each trust consisted of 94 shares of the capital stock of The Cincinnati Stamping Company, an Ohio corporation. Each trust was declared to be irrevocable. No power was reserved to revoke, alter or amend the instruments. No right to revest either the corpus *93 or income in the petitioner existed. The income was to be paid to each beneficiary until he or she reached the age of 21 years, at which time the corpus was to be paid over absolutely. In the event of the death of a beneficiary before reaching the age of 21 years, the income was to be paid unto the petitioner's surviving children until each reached the age of 21 years, when the corpus was to be paid over to them absolutely. Petitioner's wife, Agnes Grimme, was named trustee, with broad powers of investment and management. During the taxable years no distributions were made to the beneficiaries, and the only disbursements made by the trustee were payments for income taxes. These trusts, on their face, constitute absolute gifts to the respective beneficiaries of the trust corpus and the income therefrom. The respective beneficiaries being the beneficial owners of the property, the income is taxable to them. Blair v. Commissioner, 300 U.S. 5. The respondent in his deficiency notice based his determination wholly upon his construction of the trusts themselves as rendering the income therefrom taxable to petitioner under sections 22 (a), 166 and 167 of the Code. The respondent *94 argues that these trusts should be considered in connection with the August 1, 1940 trust and the so-called "partnership" arrangement. We find no justification for such action. The evidence shows that when the eldest beneficiary reached his majority the corpus and undistributed income were paid to him in accordance with the trust provisions, and the trust terminated. We are unable to find any ground for holding that the income of the 3 trusts created by him in 1937 should be taxed to petitioner. On this issue we sustain the petitioner. A part of the deficiencies determined by the respondent results from his taxing petitioner with the income from a trust created on August 1, 1940 by Agnes Grimme, wife of the petitioner. Respondent contends, while petitioner was not the settlor of the trust, his powers as trustee, considered in connection with the facts and circumstances surrounding its execution and administration, justify taxing the income to petitioner under sections 22 (a), 166 and 167 of the Internal Revenue Code. Helvering v. Stuart, 317 U.S. 154; Helvering v. Clifford, 309 U.S. 331; edward Mallinckrodt, Jr., 2 T.C. 1128; affd., 146 Fed. (2d) 1; *95 cert. den., 324 U.S. 871 (Apr. 9, 1945); Edgar R. Stix, 4 T.C. 1140. The corpus of this trust was $100. The trust was to continue until July 31, 1959, a period of 19 years. The trust agreement provided "From the date of the execution of this agreement until the termination thereof, the income thereof may and shall be expended for the education" of the beneficiaries "as and when necessary for the same, at the discretion of the Trustee." The eldest beneficiary was 15 years of age, so that under this provision the income was to be spent for his education until he reached the age of 34, or sooner dies. By another provision, the trustee was to be compensated for his services as such trustee from the income of the trust, in the sum of $5,000 per year, which was to be a first charge upon the income. The trustee was given very broad powers of investment, management and control with "full power * * * to enter into associations, partnerships, firms and other business ventures." These 2 provisions furnish a clue to the purposes and motive for the creation of this particular trust. Concurrently, and under date of August 1, 1940, petitioner, as trustee, invested the $100 *96 corpus of this trust in a so-called partnership known as Cincinnati Stamping Company. It may be noted here that the instant case was heard concurrently with a tax proceeding involving the latter company, (Docket No. 4620). It has been stipulated that the record in that proceeding shall be available by inference for all evidentiary purposes in the instant case. The proof adduced in the Cincinnati Stamping Company case developed certain facts material to the issues here. These facts are set forth in "Findings of Fact" contained in our Memorandum Findings of Fact and Opinion in the Cincinnati Stamping Company case entered July 25, 1945. Those facts material here have been incorporated in our present findings of fact. Briefly summarized, they show that in 1940 petitioner, together with William P. Eger, George A. Wimmer, Albert Hoersting and John G. Schroer, was an officer and director of that corporation; that the stock of that corporation was owned by these individuals and by family trusts of certain of these individuals on August 1, 1940, the above-named individuals and Eleanor Sherman executed a contract designated "Partnership Agreement" for carrying on a business under the name of *97 Cincinnati Stamping Company; the capital of the "partnership" was to be $500, of which sum the trust created by petitioner's wife contributed $100; petitioner, together with the above-mentioned individuals, caused the transfer of the assets and business of the corporation to the so-called "partnership" and thereafter the business was continued as theretofore. This trust of August 1, 1940 was without significance unless read in connection with the "Partnership Agreement" of even date. They must be read and construed as a single instrument. Rose Mary Hash, 4 T.C. 878. When so read and scrutinized in the light of surrounding circumstances, we think petitioner, although not the settlor, had such control over the trust property and the source from which its income was to be realized as to render him taxable on the income of the trust under section 22 (a). Edward Mallinckrodt, Jr., supra; Helvering v. Clifford, supra.The respondent's contention with respect to this trust is sustained. [1]
The remaining issue relates to the disallowance of the amount of $106.17, *98 as a deduction under section 23 (o) of the Internal Revenue Code. The petitioner adduced no proof respecting this item, and has not argued it on brief. The issue is deemed abandoned and the respondent's determination thereon is sustained. It is agreed that there must be a recomputation of the deficiencies if it be held in a proceeding of Cincinnati Stamping Company, Docket No. 4620, [4 TCM 806], that the alleged partnership constituted an association taxable as a corporation. In that event the amounts included by respondent as the distributive share of the trust as a so-called "partner" must be adjusted to reflect only the amount actually distributed as considered in the nature of a dividend. As we have held the so-called "partnership," Cincinnati Stamping Company, in that proceeding to be an association, the adjustment in question will be made. Decision will be entered under Rule 50. Footnotes
1. See Memorandum Opinion in Estate of William P. Eger, Docket No. 4626, involving similar trusts.↩