Mary K. Ellis v. Commissioner.
Mary K. Ellis v. Commissioner
Docket No. 7176.
United States Tax Court
1947 Tax Ct. Memo LEXIS 179; 6 T.C.M. (CCH) 662; T.C.M. (RIA) 47160; June 20, 1947
*179 Petitioner acquired certain school district bonds by gift in 1927. Interest payments were first defaulted in 1930. The defaults were made good until 1935 after which no further payments were made. Negotiations for collection proving unsuccessful petitioner instituted suit in 1939, obtained a verdict in 1940 on which judgment was entered and execution issued in 1941, but no recovery had thereon. Held, the petitioner failed to prove that the bonds became worthless in 1941. Petitioner claimed her brother, his wife, and 12 nieces and nephews, who resided in Ireland, as dependents. Held, petitioner is not entitled to the credit provided by section 25 (b) (2) (A), I.R.C., following Clarence D. Kerr, 46 B.T.A. 1180
During the taxable year petitioner maintained an office which handled her affairs and collected certain taxable and nontaxable income. Held, office expenses should be allocated between taxexempt and taxable income in accordance with proration formula in Edward Mallinckrodt, Jr., 2 T.C. 1128. *181 Harry J. Alker, Esq., for the petitioner. Robert H. Kinderman, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves an income tax deficiency for 1941 in the amount of $6,770.05. The issues are (1) whether certain school bonds became worthless in 1941; (2) whether petitioner is entitled to a credit for 14 alleged dependents, and (3) whether an expense deduction of $3,150 should be allowed in its entirety or a portion thereof disallowed because allocable to non-taxable income. Other adjustments made by respondent are uncontested, or the issue with respect thereto has been abandoned. Findings of Fact Petitioner resides in Haverford, Pennsylvania. Her income tax return for 1941 was filed with the collector of internal revenue for the first district of Pennsylvania. On line 7 (b) of her 1941 return petitioner claimed a net long-term capital loss of $10,300. Respondent denied $9,900 of the claimed loss, $2,750 of which related to Pittstown School District bonds, and $7,150 of which related to Lackawanna School District bonds. Petitioner accepts respondent's adjustment as to the Pittstown bonds. Petitioner acquired *182 certain bonds of the School District of the Township of Lackawanna by gift in 1927. Interest payments were regularly made on the bonds until about 1930. From 1930 through 1935 interest payments were made but not on the due dates. No interest payments were made on the bonds on or after October 1, 1936. After defaults and prior to November, 1939, petitioner's attorney unsuccessfully attempted to obtain payment from the local authorities. On November 3, 1939, petitioner sued the School District on the bonds. A verdict was entered in petitioner's favor on March 12, 1940 and judgment was entered thereon July 22, 1941. On July 23, 1941 the court directed that a writ issue in the nature of a mandamus execution. The writ was returnable September 8, 1941. Nothing was collected on the bonds. Petitioner's attorneys advised her that the bonds were worthless in the taxable year. The Girard Trust Company of Philadelphia, Pennsylvania, petitioner's fiduciary, attempted to find a market for the bonds of the above School District during 1936 and thereafter in the cities of Philadelphia, Scranton, Wilkes-Barre and Harrisburg, Pennsylvania. It was unable to obtain a firm bid, or to find a market for *183 the bonds. Petitioner's School District bonds did not become worthless during the taxable year. On line 21 of her income tax return for 1941 petitioner claimed a credit for 14 dependents in the amount of $5,600. The respondent denied the credit. The claimed dependents were petitioner's brother, Mark Kelly, his wife, Marie Kelly, their 10 children, Molly Wynne, a niece, and Bernadette McConville, all of whom resided in Ireland. Mark Kelly was about 38 years of age in the taxable year and had had a heart condition since 1930. He was not permitted to work by his doctors. He had a farm of about 50 acres upon which he raised cattle. He employed someone to run the farm. Most of his children were born after 1930 and were too young to be employed. The income from the farm was unknown to petitioner. Mark Kelly's wife was "not very well" but carried on her household duties. Petitioner visited in Ireland every year befor the war stopping at her father's home. Mark Kelly and his family lived three miles away and visited with her in the father's home. Molly Wynne was the daughter of petitioner's sister. During the taxable year petitioner remitted a total of almost $7,500 to her brother, and *184 other relatives in Ireland. The remittances, 25 in number, were made in pounds sterling, through the Girard Trust Company to the following individuals on the dates mentioned: Feb. 10
Nancy Wynne
50 [*] Mark Kelly
50 [*] Beatrice McConville
50 [* Feb. 26
Mark Kelly
200 [*] Mar. 29
Nancy Wynne
50 [*] Beatrice McConville
50 [*] Apr. 12
Mark Kelly
100 [*] May 31
Nancy Wynne
50 [*] Beatrice McConville
50 [*] Mark Kelly
200 [*] July 11
Molly Kelly
50 [*] July 18
Nancy Wynne
50 [*] Beatrice McConville
50 [*] Mark Kelly
100 [*] Sept. 2
Nancy Wynne
50 [*] Beatrice McConville
50 [*] Mark Kelly
100 [*] Oct. 23
Nancy Wynne
50 [*] Mark Kelly
50 [*] Beatrice McConville
50 [*] Dec. 9
James Kelly
50 [*] P. Joseph Kelly
50 [*] Nancy Wynne
100 [*] Mark Kelly
100 [*] Beatrice McConville
100 [*] Each of the remittances on December 9th carried the following message: "Xmas greetings to family, Molly." The remittance to Molly Kelly on July 11th, carried the following message: "Birthday greetings love Auntie Molly." The remittance *185 to Mark Kelly on April 12th carried the following message: "Easter greetings, Molly." The remittance to Mark Kelly on May 31st carried a request that, "In future confirm receipt of money direct to Mrs. Mary Ellis." The March 29th remittance to Mrs. Beatrice McConville carried the following message: "Happy birthday to Mary." Petitioner is not entitled to a credit for dependents. In Line 16 of her 1941 income tax return petitioner claimed as "other deductions authorized by law" the sum of $3,150. The deduction was explained in Schedule C as "Agt's com. etc. $3,150." The respondent allowed $910.23 of the claimed deduction and disallowed $2,239.77. He explained his action as follows: "The amounts paid to attorneys and for office expenses, etc., are reduced by the ratable amount 'allocable to interest * * * wholly exempt from the taxes * * *.' Section 121 (b) Revenue Act of 1942." During the taxable year petitioner maintained an office in the Stock Exchange Building for taking care of her affairs, paying her bills and collecting her income. She paid $32.50 per month, or $390 per year, rental for her office space. She employed a secretary who received a salary and commission for the *186 taxable year of $1,555. Miscellaneous office expenses for the taxable year paid by check, and excluding rent, aggregated $386; miscellaneous office expense paid by cash, such as postage, cleaning, maids for cleaning office, etc., is undisclosed. Petitioner paid legal expenses of $500 during the year in connection with litigation over her personal property taxes. Depreciation on office furniture and equipment in 1941 amounted to $200. Petitioner reported dividends on line 2 of her 1941 return of $2,965.45 and interest on line 3 of $680. Respondent determined that $720 of the interest reported on line (d) of Schedule A was taxable interest and not exempt as reported. Interest reported on line (a) of Schedule A of petitioner's 1941 return total $37,471.56 of which respondent determined petitioner's office collected $3,547.92 and Girard Trust Company, the remainder. During the taxable year petitioner's office collected tax-exempt income of $3,547.92 and taxable income of $4,365.45, or a total income of $7,913.37. Opinion The first issue is governed by section 23 (k) (2) of the Internal Revenue Code which provides that if any securities become worthless within *187 the taxable year and are capital assets, the loss (for our purposes) shall be considered as a loss from the sale or exchange of the capital asset on the last day of the taxable year. Section 23 (k) (3) defines a security, inter alia, as a bond issued by a government or a political subdivision thereof with interest coupons or in registered form. The Lackawanna School District bonds were capital assets, as defined in section 117 (a) I.R.C. Petitioner had held the bonds since 1927. When first acquired, the bonds paid interest regularly. Beginning in or about 1930 the interest payments were late. The default became complete in 1936 for no further payments were made. Petitioner sought collection on the bonds first by negotiation with the township authorities, and then by suit filed in 1939. Petitioner prosecuted the suit to judgment but was never able to collect anything thereon. Since judgment was entered and a writ of execution issued and returned unsatisfied in 1941, she contends that the worthlessness of the bonds was established within the taxable year. Respondent takes the position that the bonds became worthless prior to the taxable year. He produced as *188 a witness the assistant trust investment officer of the Girard Trust Company, who was active in analyzing bonds of the same issue for the latter company. This witness testified and we have found as a fact that the Girard Trust Company unsuccessfully attempted to find a market during 1936, and thereafter in various cities in Pennsylvania. This testimony coupled with the defaults beginning as early as 1930 and the failure of petitioner to show that the bonds had any value at the beginning of the taxable year supports respondent's contention. In this view petitioner's suit on the bonds merely established a fact which respondent says was already clearly apparent, namely, that the bonds were worthless prior to 1941. It should be noted that a verdict was entered in petitioner's favor in March 1940. The delay of more than a year in entering judgment and issuing a writ of execution is unexplained We do not have one of the bonds in evidence and are uninformed as to the terms thereof. We do not know how many bonds petitioner had, what secured them, or how much they cost the donor. In our opinion petitioner has failed to prove that the bonds became worthless in 1941. The fact that she ascertained *189 them to be worthless in the taxable year is no longer controlling under the statute. It is worthlessness, not the ascertainment thereof, which controls under section 23 (k) (2). See Boehm v. Commissioner, 325 U.S. 847, decided November 13, 1945. Section 25 (b) (2) (A) of the Internal Revenue Code provides for a credit of " $400 for each person (other than husband or wife) dependent upon and receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective." Twelve of the dependents claimed by petitioner appear to be children under the age of 18 years although the record is none too satisfactory in this respect. Two of the dependents were adults and the parents of ten of the children. As to the parents petitioner can claim a dependency credit for them only on the ground that they were "incapable of self-support because mentally or physically defective." The evidence is directed toward establishing that petitioner's brother and his wife were incapable of self-support because physically defective. Petitioner testified that her brother had *190 a very bad heart condition and that he was not permitted to work by the doctors. Yet he managed a 50-acre farm upon which he raised cattle, performed his husbandly duties, and had a family of 10 children. If Mark Kelly was physically incapable of supporting himself, that fact could have been established by a deposition of his doctors. We cannot find him to be a dependent of petitioner upon her unsupported statement that his physical condition rendered him incapable of self-support. The evidence that petitioner's sister-in-law, Marie Kelly, is one of her dependents is even less convincing. Petitioner testified that her brother's wife was not very well household duties. No other evidence was offered as to Marie Kelly's physical condition. Such evidence is totally insufficient to establish that Marie Kelly was incapable of self-support because physically defective. In Clarence D. Kerr, 46 B.T.A. 1180, we considered the right of the taxpayer to a statutory credit for dependents upon the ground that he was the chief support of his four grandchildren. We there stated, page 1182: "In order that the credit be allowed it is necessary that the support be given to one who is *191 in fact dependent upon the giver and the financial assistance given must constitute the chief support of the dependent. Each family constitutes a unit and, except in extraordinary circumstances, the dependents of one family are not to be credited as dependents of another. That petitioner's two sons, John and Clarence, were both legally and morally required to care for their own children seems clear and that those children were the dependents of their own parents and not of their grandparents we believe to be equally clear. * * * "The contributions made by petitioner during the several years were to his two sons and their families as a whole and were not made specifically to or for the benefit of his grandchildren. It is true that petitioner's generosity permitted the grandchildren to be cared for in a manner that would not have been possible but for his assistance, but this does not, in our opinion, make them dependents of their grandfather, either legally or otherwise. See L. B. Hirsch, 42 B.T.A. 566, 579; affd., 124 Fed. (2d) 24. During all of these years the grandchildren continued to live with their own parents and during the whole period their fathers *192 were gainfully employed. Even though a person may furnish the chief support of a minor, it does not necessarily follow that the support given is to one who is in fact dependent upon him." Petitioner's situation with respect to her nieces and nephews is substantially similar to Kerr's situation with respect to his grandchildren, and the reasoning in that case is controlling here. In addition it is noted that petitioner indicated in messages sent with some of her remittances that gifts might have been intended. On this issue we approve respondent's determination. The final issue involves respondent's allocation of an expense deduction of $3,150 between petitioner's taxable income and her tax exempt income in accordance with the provisions of sections 23 (a) (2) and 24 (a) (5) of the Internal Revenue Code, as amended. Since petitioner was engaged in no trade or business, any deductible expense to which she would be entitled under section 23 (a) would have to be the non-trade or non-business expenses allowed as deductions by section 23 (a) (2). Such expenses are "all the ordinary and necessary expenses paid or incurred during the taxable year for the production *193 or collection of income," or all the ordinary and necessary expenses paid or incurred during the taxable year "for the management, conservation, or maintenance of property held for the production of income." Even if entitled to deduct the expenses under section 23 (a), petitioner must still establish that she qualifies under section 24 (a) (5). [1]
Respondent has determined that under section 24 (a) (5) only $910.23 of the $3,150 claimed is deductible, and has disallowed the remaining $2,239.77. His determination is based upon application of the formula laid down *194 in Edward Mallinckrodt, Jr., 2 T.C. 1128, 1148, affd., 146 Fed. (2d) 1, cert. denied, 324 U.S. 871, where, as here, the expenditures in controversy related to the receipt of both taxable and non-taxable income. We there stated that in the absence of evidence establishing the portion of the expenditure allocable to non-taxable income and in the absence of evidence indicating what would constitute a more reasonable basis for such allocation, the expenditures would be allocated to taxable income and non-taxable income. Here the basic ratio used by respondent is 3547.92/7913.37 of the expenditures in controversy. Petitioner contends that there should be no allocation of the $3,150 "because they were mostly incurred in the collection of taxpayer's taxable income and attending to payment of general taxes." If, however, the Court applies the Mallinckrodt formula, petitioner contends that the amount to be allocated to taxable income is $1,739.90, and not $910.23 as allowed by respondent. Petitioner bases her contention upon the following computation: 3547.92/7913.37 of $3,150 is $1,410.10 which is the amount of the total expenditures allocable to non-taxable *195 income. The difference, or $1,739.90, would be the amount allocable to taxable income and would be deductible under section 23 (a) (2). Respondent's determination that only $910.23 of the $3,150 expenditure is deductible rests in part upon a fact which we have determined against him. Evidence was offered by respondent to show that $1,500 of the $3,150 represented attorney fees paid in connection with the judgment obtained by petitioner on the Lackawanna School District bonds hereinabove considered. Since the bonds were tax-exempt securities respondent eliminated this $1,500 item from petitioner's $3,150 total and computed the amount of expense allocable to taxable income on the remainder, that is 3547.92/7913.37 of $1,650 ($3,150 - $1,500). Petitioner offered the testimony of two witnesses on this point, her attorney and her secretary. They flatly contradicted the revenue agent's testimony that a $1,500 attorney fee was included in petitioner's office expenses in connection with litigation on the aforementioned school bonds. Petitioner's witnesses testified that $500 was paid her attorney for services and that such fee was paid in connection with her personal property taxes and *196 not in connection with the school bond litigation. Weighing the testimony of the witnesses as carefully as we can we have found as a fact that the attorney fee included in the $3,150 total was $500. But we have not been able to find that the fee so paid was a non-trade or nonbusiness expense applicable only to taxable income. Nor can the other items in the $3,150 total be classified as expenditures made in connection with the production or collection of taxable income. We cannot, therefore, agree with petitioner that the evidence establishes the deductibility of the entire $3,150. There is an absence of evidence in this record establishing the portion of the $3,150 expenditure that should be allocated to taxable income. Furthermore, there is an absence of evidence indicating a more reasonable basis for allocation than the formula prescribed in the Mallinckrodt case. That formula should be applied herein the ratio determined by the respondent. For the purposes of this computation we assume that the cash payments for miscellaneous items of office expenses in an undisclosed amount are equal to the difference between the items found as a fact and the $3,150 total used by both parties. *197 Respondent's breakdown shows a safety deposit box rental of $50 to which no reference is made in petitioner's breakdown but which might well be included with postage, maid, cleaning and other miscellaneous expense items. In view of our decision on the last issue there will be an increase in the deduction allowed petitioner under section 23 (a) (2) over the amount allowed by respondent. This in turn will require an adjustment of petitioner's deduction for contributions. These adjustments should be made in the recomputation of petitioner's tax liability. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - * * *
(5) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this chapter, or any amount otherwise allowable under section 23 (a) (2)↩ which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this chapter;